**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

DONVILLE JAMES                              )
                                           )
              Plaintiff,                    )
                                           )
       v.                                   )         Civ. No. 06-1951 (GK)
                                           )
UNITED STATES SECRET SERVICE               )
FEDERAL BUREAU OF INVESTIGATION            )
DEPARTMENT OF JUSTICE                       )
              Defendants.                   )
_____)

**MOTION FOR SUMMARY JUDGMENT FOR
DEFENDANTS**

Pursuant to Fed. R. Civ. P. 56, defendants, the Federal Bureau of Investigation (FBI), a

subcomponent of the United States Department of Justice (DOJ), and the United States Secret

Service (USSS), a subcomponent of the Department of Homeland Security (DHS), respectfully

move for summary judgment.  As grounds for this motion, defendants assert that there are no

genuine issues of material fact and that they are entitled to judgment as a matter of law.[1]  A

---

[1]  Plaintiff should take notice that any factual assertions contained in the affidavits and
other attachments in support of defendants' motion will be accepted by the Court as true unless
the plaintiff submits his own affidavits or other documentary evidence contradicting the
assertions in the defendants' attachments.  See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992),
Local Civil Rule 7.1(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein.  Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith.  The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits.  When a motion for
> summary judgment is made and supported as provided in this rule,
> an adverse party may not rest upon the mere allegations or denials
> of the adverse party's pleading, but the adverse party's response, by

memorandum of points and authorities, a statement of genuine issues of material fact not in

dispute, and a proposed order granting the relief sought are attached hereto.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, BAR # 498610
United States Attorney

_____
RUDOLPH  CONTRERAS, Bar # 434122
Assistant United States Attorney

_____
BENTON G. PETERSON,  Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C.  20530
(202) 514-7238 514-8780 (Facsimile)
 Benton.Peterson@usdoj.gov

Date: April 16 , 2007

---

affidavits or as otherwise provided in this rule, must set forth
specific facts showing that there is a genuine issue for trial.  If the
adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DONVILLE JAMES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 06-1951 (GK) |
| | ) | |
| UNITED STATES SECRET SERVICE | ) | |
| FEDERAL BUREAU OF INVESTIGATION | ) | |
| DEPARTMENT OF JUSTICE | ) | |
| Defendants. | ) | |

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

_____Pursuant to Local Rule 7.1(h), the defendant hereby submits the following material facts as to which there is no genuine dispute:

**Plaintiff's Request to Defendant FBI**

1) By letter dated August 17, 2005, plaintiff submitted a request for any records maintained at Defendant FBI pertaining to himself and information on Allen Duban.[1]  Plaintiff included a completed Certification of Identity form on himself.  (Hardy Decl.¶5,  **Exhibit A.**)

2) By letter dated September 9, 2005, Defendant FBI advised plaintiff that a search of the automated indices to the Central Records System Headquarters located no records responsive to his FOIA/Privacy Act ("FOIPA") request. (Request Number 1028354-000).  Defendant FBI advised plaintiff of his right to file an administrative appeal to the Department of Justice, Office of Information and Privacy ("OIP"). (Hardy Decl. ¶6, **Exhibit B.**)

---

[1]In requesting information from the FBI, plaintiff utilized both Allen "Duban" and Allen "Dubon" spellings within various correspondence. Hardy Decl. ¶ 5.  However, as explained below and in the attached declarations, the correct spelling of this third party name is not relevant to the determination of this matter as to either defendant.

3)  By letter dated September 27, 2005, plaintiff submitted another request to Defendant FBI for any records maintained at the Chicago Field Office (CGFO)  pertaining to himself and third party Allen Duban, specifically he requested the compile file #281-CG-117362-BCI; 270F-CG-117142-A. (Hardy Decl. ¶7.)

4)  By letter dated October 11, 2005,Defendant FBI acknowledged receipt of plaintiff's FOIA/Privacy Act request to the CGFO and assigned it FOIPA Request Number 1030515. (Hardy Decl. ¶8, **Exhibit D.)**

5) By letter dated December 14, 2005, Defendant FBI advised plaintiff that it had reviewed 77 pages  responsive to his request, and that13 pages were being released to plaintiff. Plaintiff was advised that information was being withheld pursuant to Privacy Act exemption (j)(2) and FOIA exemptions (b)(2), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Plaintiff was also advised that the Defendant FBI had located documents which originated with, or contained information concerning other Government agency(ies) ("OGA") and had referred this information to the OGA[2] for direct response to plaintiff.    The Defendant FBI advised plaintiff of his right to file an administrative appeal to the OIP. **(** Hardy Decl. ¶9, **Exhibit E).**

6) Upon receipt of the complaint in this litigation, the FBI conducted a second search. (Hardy Decl. ¶ 24).   By letter dated January 30, 2007, Defendant FBI advised plaintiff that an additional 2 pages responsive to his request would be released. Id.¶ 10. Plaintiff was advised that excisions were made pursuant to Privacy Act exemption (j)(2) and FOIA exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(D).  Defendant FBI stated that a search of its electronic surveillance records failed to locate any responsive records.  It also explained that absent a privacy waiver or

---

[2]The United States Secret Service.

proof of death, it could neither confirm nor deny the existence of records concerning third party

Allen Duban.  Defendant FBI advised plaintiff of his right to file an administrative appeal to the

OIP.  (Hardy Decl. ¶ 10, **Exhibit F.)**.

7) Defendant FBI contacted the Office of Information Policy (OIP), the office authorized

to review FOIA appeals of FBI release determinations.  OIP advised that it has no record of

plaintiff filing an administrative appeal stemming from Defendant FBI's September 9, 2005,

December 14, 2005, and January 30, 2007 letters to plaintiff.  Therefore plaintiff has failed to

exhaust the administrative remedies available to him prior to filing this complaint.  Hardy Decl. ¶

29.

### Plaintiff's Request to Defendant USSS

8)      By letter dated August 22, 2005, and received by the Defendant USSS on

September 15, 2005, the plaintiff submitted a request for any and all information in USSS files

concerning any investigation of him.  Plaintiff also requested information regarding a third party,

Allen Duban. ( Lyerly Decl. ¶ 4).

9)      Plaintiff's request for information regarding himself was assigned File No.

20050573.  The portion of his request for information regarding Allen Duban was assigned File

No. 20050574. (Lyerly Decl. ¶ 5).

10)  The Master Central Index (MCI) provides a system of record keeping of information

for cases and subjects of record in investigative, protective, and administrative files maintained

by the Secret Service. (Lyerly Decl. ¶11).  An MCI search for records concerning the plaintiff

produced three potential files indexed to plaintiff's name which were being maintained in the

Chicago Field Office of the Secret Service. Id. ¶ 12.   One of these files dealt with a criminal

investigation involving the plaintiff (hereinafter "Investigative File) and a second file concerned an automobile accident between the plaintiff and a Secret Service employee. Only the first file was considered to be responsive to plaintiff's request. Id.

11) A more recent search, during the course of this litigation, by the Chicago Field Office was able to locate documents that had been indexed under the third file number. This file concerned an asset forfeiture action regarding material seized from the plaintiff during the course of the criminal investigation of him. This file is hereinafter referred to as the "Asset Forfeiture File". Id. ¶14.

12) The Investigative File and the Asset Forfeiture File located in response to plaintiff's information request were compiled in connection with the Secret Service's investigation of criminal charges against the plaintiff. Lyerly Decl. ¶17. Thus, in addition to exemption 7(A), Defendant USSS invoked exemption 7(C) to the names and other identifying information of Secret Service personnel and third parties in the Asset Forfeiture File. Id. ¶ 24.

13) By letter dated January 18, 2007, the Defendant USSS informed the plaintiff that no responsive material could be released to him at this time pursuant to 5 U.S.C. (b)(7)(A), since disclosure of this material could reasonably be expected to interfere with ongoing enforcement proceedings. Lyerly Decl. ¶ 6.

_____

Respectfully submitted,

_____
JEFFREY A. TAYLOR, BAR # 498610
United States Attorney


_____
RUDOLPH  CONTRERAS, Bar # 434122
Assistant United States Attorney


_____
BENTON G. PETERSON,  Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C.  20530
(202) 514-7238 514-8780 (Facsimile)
 Benton.Peterson@usdoj.gov


Date: April 16, 2007

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

DONVILLE JAMES                                      )
                                                   )
                    Plaintiff,                     )
                                                   )
        v.                                         )        Civ. No. 06-1951 (GK)
                                                   )
UNITED STATES SECRET SERVICE                       )
FEDERAL BUREAU OF INVESTIGATION                    )
DEPARTMENT OF JUSTICE                              )
                    Defendants.                    )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**
**FOR DEFENDANT FEDERAL BUREAU OF INVESTIGATION**

_____Plaintiff Donville James is a federal prisoner currently incarcerated at the United States

Federal Correctional Facility at Greenville, Illinois.  In August of 2005, plaintiff sent letters to

the various defendants requesting all documents in connection with himself and of a third party,

Allen Duban.  Requests were processed by both governmental agencies including the Federal

Bureau of Investigation (FBI) and the United States Secret Service (USSS).

        Through this motion, defendants United States Department of Justice (DOJ) on behalf of

its subcomponent, the FBI, and the Department of Homeland Security (DHS) on behalf of its

subcomponent the United States Secret Service (USSS), hereby request that the Court enter

summary judgment in their favor and dismiss this matter with prejudice.  As set forth below, the

defendants have conducted a reasonable search in response to plaintiff's request and has

adequately justified all materials withheld from disclosure pursuant to the relevant FOIA

exemptions.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

**Plaintiff's Request to Defendant FBI**

By letter dated August 17, 2005, plaintiff submitted a request for any records maintained at Defendant FBI pertaining to himself and information on  Allen Duban.  Plaintiff included a completed Certification of Identity form on himself.  Hardy Decl., **See Exhibit A.** Hardy Decl. ¶5

 By letter dated September 9, 2005, Defendant FBI advised plaintiff that a search of the automated indices to the Central Records System Headquarters located no records responsive to his FOIA/Privacy Act ("FOIPA") request. (Request Number 1028354-000).  Defendant FBI advised plaintiff of his right to file an administrative appeal to the Department of Justice, Office of Information and Privacy ("OIP"). Hardy Decl. ¶6, **Exhibit B.**

By letter dated September 27, 2005, plaintiff submitted another request to Defendant FBI for any records maintained at the Chicago Field Office (CGFO)  pertaining to himself and third party Allen Duban, specifically he requested the compile file #281-CG-117362-BCI; 270F-CG-117142-A. Hardy Decl. ¶7.

By letter dated October 11, 2005,Defendant FBI acknowledged receipt of plaintiff's FOIA/Privacy Act request to the CGFO and assigned it FOIPA Request Number 1030515. Hardy Decl. ¶8,  **Exhibit D.**

 By letter dated December 14, 2005, Defendant FBI advised plaintiff that it had reviewed 77 pages  responsive to his request, and that13 pages were being released to plaintiff.  Plaintiff

2

was advised that information was being withheld pursuant to Privacy Act exemption (j)(2) and FOIA exemptions (b)(2), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Plaintiff was also advised that the Defendant FBI had located documents which originated with, or contained information concerning other Government agency(ies) ("OGA") and had referred this information to the OGA for direct response to plaintiff.   The Defendant FBI advised plaintiff of his right to file an administrative appeal to the OIP. Hardy Decl. ¶9, **Exhibit E.**

By letter dated January 30, 2007, Defendant FBI advised plaintiff that an additional 2 pages responsive to his request would be released.  Plaintiff was advised that excisions were made pursuant to Privacy Act exemption (j)(2) and FOIA exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(D).  Defendant FBI stated that a search of its electronic surveillance records failed to locate any responsive records.  It also explained that absent a privacy waiver or proof of death, it could neither confirm nor deny the existence of records concerning third party Allen Duban.  Defendant FBI advised plaintiff of his right to file an administrative appeal to the OIP. Hardy Decl. ¶ 10, **(<u>See</u> Exhibit F.)**.

 Defendant FBI contacted the Office of Information Policy (OIP), the office authorized to review FOIA appeals of FBI release determinations.  OIP advised that it has no record of plaintiff filing an administrative appeal stemming from Defendant FBI's September 9, 2005, December 14, 2005, and January 30, 2007 letters to plaintiff.  Therefore plaintiff has failed to exhaust the administrative remedies available to him prior to filing this complaint.  Hardy Decl. ¶ 29.

**Plaintiff's Request to Defendant USSS**

By letter dated August 22, 2005, and received by the Defendant USSS on September 15, 2005, the plaintiff submitted a request for any and all information in USSS files concerning any

investigation of him.  Plaintiff also requested information regarding a third party, Allen Duban. See, Lyerly Decl. ¶ 4.

Plaintiff's request for information regarding himself was assigned File No. 20050573. The portion of his request for information regarding Allen Duban was assigned File No. 20050574.  Lyerly Decl. ¶ 5.

The Master Central Index ("MCI") provides a system of record keeping of information for cases and subjects of record in investigative, protective, and administrative files maintained by the Secret Service. Lyerly Decl. ¶11.  An MCI search for records concerning the plaintiff produced three potential files indexed to plaintiff's name which were being maintained in the Chicago Field Office of the Secret Service. Id. ¶ 12.   One of these files dealt with a criminal investigation involving the plaintiff (hereinafter "Investigative File) and a second file concerned an automobile accident between the plaintiff and a Secret Service employee.  Only the first file was considered to be responsive to plaintiff's request. Id.

A recent search, during the course of this litigation, by the Chicago Field Office was able to locate documents that had been indexed under the third file number. This file concerned an asset forfeiture action regarding material seized from the plaintiff during the course of the criminal investigation of him.  This file is hereinafter referred to as the "Asset Forfeiture File". Id. ¶14.

The Investigative File and the Asset Forfeiture File located in response to plaintiff's information request were compiled in connection with the Secret Service's investigation of criminal charges against the plaintiff. Lyerly Decl. ¶17. Thus, in addition to exemption 7(A), Defendant USSS invoked  exemption 7(C) to redact the names and other identifying

4

information of Secret Service personnel and third parties in the Asset Forfeiture File. Id. ¶ 24.

By letter dated January 18, 2007, the Defendant USSS informed the plaintiff that no responsive material could be released to him at this time pursuant to 5 U.S.C. (b)(7)(A), since disclosure of this material could reasonably be expected to interfere with ongoing enforcement proceedings.  Lyerly Decl. ¶ 6.

## II. ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(c); Alveska Pipeline Serv. Co, v. EPA, 856 F.2d 309, 313 (D.C. Cir. 1988) (conflict in declarations alone insufficient to preclude entry of summary judgment); Weisberg v. Department of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). The Court exercises de novo review over FOIA matters, and the burden is on the agency to justify all non-disclosures. 5 U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 755 (1989). In carrying its burden, agencies may rely on declarations of government officials which courts normally accord a presumption of expertise in FOIA as long as the declarations are sufficiently clear and detailed and submitted in good faith.  Oglesby v. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see Hayden v. National Security Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979). Once the Court determines that the declarations are sufficient, it need not inquire further. Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C. Cir. 2001).

Here, summary judgment should be entered in favor of defendants because the evidence

shows that they conducted reasonable and adequate searches and any information that fell within

the class of documents plaintiff requested was either produced or is exempt from disclosure

under FOIA. Students Against Genocide v. Department of State, 257 F.3d at 833. The

declarations contain reasonable specificity of details regarding the search and the reasons for the

withholding, in whole or part, of the information not produced to plaintiff. Defendants'

judgments regarding the production or withholding of documents here objectively survive the

tests of reasonableness, good faith, specificity, and plausibility.

**B.    THE DEFENDANTS' SEARCH WAS ADEQUATE**

   **1. The Applicable Legal Standard**

   In responding to a FOIA request, an agency is under a duty to conduct a reasonable search

for responsive records. Oglesby v. U.S. Dept. of Army, 920 F.2d 68 (D.C. Cir. 1990); Cleary,

Gottlieb, Steen & Hamilton v. Department of Health and Human Services, 844 F. Supp. 770, 776

(D.D.C. 1993); Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983). The

established reasonableness standard by which FOIA searches are judged "does not require

absolute exhaustion of the files; instead it requires a search reasonably calculated to uncover the

sought materials." Miller, 779 F.2d at 1384-85. Thus, "the issue in a FOIA case is not whether

the agencies' searches uncovered responsive documents, but rather whether the searches were

reasonable." Moore v. Aspin, 916 F. Supp. 32, 35 (D.D.C. 1996); see also Fitzgibon v. U.S.

Secret Service , 747 F. Supp. 51, 54 (D.D.C. 1990); Meeropol v. Meese, 790 F.2d 942, 952-53

(D.C. Cir. 1986).

   An agency demonstrates that it conducted a reasonable search by showing "that it made a

good faith effort to conduct a FOIA search for requested records by  using methods that can

reasonably be expected to produce the information requested." Western Center For Journalism v. I.R.S., 116 F. Supp.2d 1, 9 (D.D.C. 2000); Oglesby, 920 F.2d at 68.

The search standards established under the FOIA do not require an agency to search every record system, but rather, the agency need only search those systems in which it believes responsive records are likely to be located. Oglesby, 920 F.2d at 68. Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it Maynard v. C.I.A., 982 F.2d 546, 564 (1st Cir. 1993).

Simply stated, the adequacy of the search is "dependent upon the circumstances of the case." Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990). The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. U.S. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

## 2.    **Defendants Have Met Their Search Obligation**

Defendants FBI and USSS conducted adequate searches in response to plaintiff's FOIPA requests. The Hardy and Lyerly declarations adequately explain the FBI and USSS's records systems and of the administrative processing of FOIPA requests, respectively, to fully assure the Court of the adequacy of the search conducted with regard to plaintiff's request. Hardy Decl. ¶¶

7

22-31; Lyerly Decl. 9-15.

### a.    FBI Central Records System

The FBI's method of searching for materials responsive to a FOIA request involves the use of its Central Records System ("CRS") which contains administrative, applicant, criminal, personnel, and other files complied for law enforcement purposes.  Hardy Decl. ¶ 11.  This system consists of a numerical sequence of files broken down according to subject matter.  Id. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter.  Id.  Certain records in the system are maintained at FBIHQ.  Id.  Records that are pertinent to specific field offices are maintained in those fields offices.  Id.

Through the General Indices, FBIHQ and each field division can access the CRS.  Hardy Decl. ¶ 13.  The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices.  The entries in the General Indices fall into two categories: (1) a "main" entry – A "main" entry carries the name corresponding with a subject of a file contained in the CRS; and (2) a "reference" entry –  "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another "main" file. Id.  Access to the CRS files at FBI field divisions is also afforded by the General Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations.  Searches made in the General Indices to locate records concerning a particular subject, such as Donville James, are made by searching the subject requested in the index.  FBI field divisions have automated indexing

functions. Therefore, the general indices to the CRS are the means by which the FBI determines what retrievable information, if any, the FBI may have in its CRS on a particular subject matter. Id. ¶ 14.

The Automated Case Support ("ACS") was implemented for all field offices, Legal Attaches ("Legats") and FBIHQ. Hardy Decl. ¶ 12. The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases. Id. The Investigative Case Management ("ICM") - provides the ability to open, assign and close investigative and administrative cases as well as to set, assign and track leads. Id. When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is utilized by all FBI offices, including FBIHQ, that are conducting or assisting in the investigation. Id.¶ 15.

The second component is the Electronic Case File ("ECF") which serves as the central electronic repository for the FBI's official text-based documents. Id.

The third component, Universal Index ("UNI") continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Id. Only the Office of Origin ("OO") is required to index. Id. The UNI, an approximately 84.5 million record index, provides functions to index names to cases and to search names and cases for use in FBI investigative and administrative cases. Id. Names of individuals and non-individuals are recorded with identifying information such as date or place of birth, race, locality, social security number, address, date of event, sex or race. Id. The General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter, e.g., "Donville James."

9

The Electronic Surveillance ("ELSUR") indices are a separate system of records from the CRS. Id.¶ 18. The "ELSUR" indices are used to maintain information on a subject whose electronic and/or voice communications have been intercepted as the result of a consensual electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI. The ELSUR indices date back to January 1, 1960. Id.¶ 17. The FBI field offices that have conducted electronic surveillances at any time from 1960 to the present also maintain ELSUR indices. Id. ¶ 17.

In response to plaintiff's requests, the FBI initiated searches of records to identify all potentially responsive main files. Hardy Decl. ¶ 22. Searches were conducted using the name "Donville James" which would cover a phonetic breakdown of both names. Id. For example, these searches would locate records using the phonetic sounds of each last and first name relating to the following names: "James, Donville" and "James, D."Id. The FBI also used plaintiff's date of birth and social security number to facilitate the identification of requested records. Id. The CGFO search located one CGFO main file, and one CGFO sub-file; the FBIHQ search located no responsive records. Id. ¶ 22. In addition, the ELSUR Index at FBIHQ was searched for any ELSUR records concerning Donville James yielding no responsive records. Id. ¶ 23.

A second search was conducted during the initiation of this litigation. Hardy Decl. ¶ 24. In this case, plaintiff did not file an administrative appeal for either request. Id. In spite of this, the FBI decided to search its FBIHQ and CGFO indices to the CRS for cross-references. Id. This second search failed to locate any responsive files or references at FBIHQ, but did identify one

responsive cross-reference in a CGFO file.[3]  At this point, the FBI has searched all locations likely to yield documents responsive to plaintiff's FOIA/Privacy Act requests to FBIHQ and the CGFO. Hardy Decl. ¶ 24.

  **b.** **USSS Master Central Index**

  The Secret Service conducted a search for responsive records. Lyerly Decl.¶ 9.  First, a search was conducted for information indexed under the plaintiff's name in the Secret Service Master Central Index (MCI). Id. Date of birth and social security were used to confirm that any files indexed under plaintiff's name in the MCI system in fact concerned the plaintiff. Id.

  The MCI is an on-line computer system used by all Secret Service field offices, resident offices, resident agencies, protective divisions, and headquarters divisions for a variety of applications. Lyerly Decl.¶ 10.  This system has been designated to serve as the nucleus of an integrated information network that provides for all of the data and message processing needs of the Secret Service. Id.

  All field offices of the Secret Service enter into the MCI individuals who are subjects in investigative or administrative files maintained by that office. Layerly Decl. ¶ 11.  If the Secret Service was maintaining records on the plaintiff in any Secret Service office, his name should be in MCI along with the case number(s) of the investigative or administrative file(s) in which he was a subject.  The MCI search for records concerning the plaintiff produced three potential files indexed to plaintiff's name which were being maintained in the Chicago Field Office of the Secret Service. Id. ¶ 12.

---

[3] This cross-reference was processed and released by FBIHQ letter dated January 30, 2007.

11

The Chicago Field Office forwarded to the FOI/PA Office two files it was maintaining regarding the plaintiff. Lyerly Decl. ¶12. One of these files dealt with a criminal investigation involving the plaintiff (hereinafter "Investigative File) and a second file concerned an automobile accident between the plaintiff and a Secret Service employee. Id. Only the first file was considered to be responsive to plaintiff's request. Lyerly Decl.¶ 12.

A recent search during this litigation yielded a document from the third file number at the Chicago Field Office which had previously indicated no records located. Id. ¶ 14. This file concerned an asset forfeiture action regarding material seized from the plaintiff during the course of the criminal investigation of him. Id. The information was released, with redactions, Lyerly Decl. ¶ 14, Exhibit 3. Three pages of this material are being withheld in its entirety as information dealing solely with a third party. Id.

### 3.   Plaintiff Has Failed To Exhaust His Administrative Remedies With Respect To His Request To Defendant FBI.

FOIA requesters may not attempt to "leapfrog" over the substantive steps in the administrative process without first exhausting all administrative remedies. Tuchinsky v. Selective Serv. System, 418 F.2d 155, 158 (7th Cir. 1969). Indeed, where a FOIA plaintiff attempts to obtain judicial review without first properly undertaking full administrative exhaustion, his lawsuit is subject to ready dismissal for lack of subject matter jurisdiction. See, e.g., Dettmann, 802 F.2d at 1477; Hymen v. Merit Sys. Protection Bd., 799 F.2d 1421, 1423 (9th Cir. 1986); Brumley v. Dept.of Labor, 767 F.2d 444, 445 (8th Cir. 1985).

By letters dated August 17, 2005 and September 27, 2005 addressed to the WFO (HQ) and CGFO, respectively,  plaintiff submitted  FOIPA requests on behalf of himself for

information on himself and a third party Allen Duban.  On September 9, 2005 Defendant FBI advised plaintiff that, for his August 17, 2005 request, no records responsive to his FOIPA Request were located via a search of the automated indices in the WFO(HQ).  Plaintiff was also advised of the procedure to appeal any denial of information to DOJ's OIP.

On December 14, 2005, Defendant FBI advised that it had reviewed 77 pages  responsive to plaintiff's request, and that13 pages were being released to plaintiff under various exemptions. Again, plaintiff was also advised of the procedure to appeal any denial of information to DOJ's OIP.

The FBI has confirmed that OIP has no record of receiving an administrative appeal for either of these requests. Hardy Decl. ¶ 32.  Therefore, plaintiff has failed to exhaust the administrative remedies available to him with respect to the WFO(HQ) prior to filing this Complaint.

## D.    EXEMPTIONS BY DEFENDANT USSS

**The Responsive Documents Are Protected by FOIA Exemption 7(A).**

Exemption 7(A) authorizes agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552 (b)(7)(A).  In defending an Exemption 7(A) withholding, the agency must show that (1) a law enforcement proceeding is pending, or reasonably regarded as either prospective, see Manna v. United States Dep't of Justice, 51 F.3d 1158, 1164 (3rd Cir. 1995), or as preventative, see, e.g., Moorefield. v. United States Secret Serv., 611 F.2d 1021, 1026 (5th Cir. 1980), and (2) that the release of the information could reasonably be expected to

13

cause some articulable harm.  See Manna, 51 F.3d at 1164.  An articulable harm occurs

"whenever the government's case in court would be harmed by the premature release of evidence

or information," Nat'l Labor Relations Board v. Robbins Tire & Rubber Co., 437 U.S. 214, 232

(1978), or when disclosure would impede any necessary investigation prior to the enforcement

proceeding. Dickerson v. U.S. Dep't of Justice, 992 F.2d 1426, 1429 (6th Cir. 1993).

Once the first threshold requirement is satisfied, the agency must establish that the release

would result in an articulable harm.  To satisfy this burden, the agency must provide at least a

general description of the types of documents at issue sufficient to indicate the type of

interference threatening the law enforcement proceeding.  Curran v. U.S. Dep't of Justice, 813

F.2d 473, 475 (1st Cir. 1987); Spannaus v. U.S. Dep't of Justice, 813 F.2d 1285, 1287 (4th Cir.

1987) (holding that a categorical description of the withheld material is sufficient because any

further details "would lead to disclosure of the very information sought to be protected").

The production of the withheld information could reasonably be expected to interfere

with the on-going appeal of plaintiff's September 10, 2002 conviction of several criminal

offenses for counterfeiting. Lyerly Decl. ¶ 19.  As noted supra, the information in the

investigative file includes documents outlining the Secret Service's investigation of plaintiff and

third party information and investigative techniques for that enforcement action, which remains

currently in litigation. Id.

Until plaintiff's conviction is final, release of the information in the Investigative File

could reasonably be expected to cause substantial harm. Lyerly Decl.¶ 20. Disclosure of these

documents could damage the preservation and gathering of evidence and endanger witnesses.

Disclosure of these records could also harm the government's defense of the plaintiff's appeal.

Accordingly, the USSS properly withheld such information.

### USSS Properly Applied Exemption (b)(7)(C) [Law Enforcement – Personal Privacy]

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The information protected by Exemption 7(c) is also covered by Exemption 6. See 5 U.S.C. § 552(b)(6). Because the standard for withholding information under Exemption 7(c) is somewhat less stringent than Exemption 6, however, there is no need to consider Exemption 6 in this case. "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997), citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987), citing Pratt, 673 F.2d at 418. A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'" Keys, 830 F.2d at 340, quoting Pratt, 673 F.2d at 421.

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. See, e.g., U.S. Dept. of Justice v. Reporters

15

Committee for Freedom of the Press, 489 U.S. 749, 776-780 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' Department of Air Force v. Rose, [425 U.S. 352, 372 (1976)], rather than on the particular purpose for which the document is being requested." Reporter's Committee, 489 U.S. at 772 (internal quotation marks omitted). Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775. That public interest is to "shed[] light on an agency's performance of its statutory duties." Id. at 772. The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." Perrone v. FBI, 908 F. SUPP. 24, 26 (D.D.C. 1995), citing Senate of Puerto Rico v. Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

The Supreme Court in National Archives and Records Admin. v. Favish, 541 U.S. 157, 169 (2004), clearly defined the standard to be applied when the courts conduct the balancing test under Exemption 7(C).

> ...where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

Favish, 541 U.S. at 174.

Exemption 7(C) consistently has been held to protect the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law

enforcement investigations.  <u>Reporters Committee</u>, 489 U.S. at 780; <u>Computer Professionals for</u>

<u>Social Responsibility v. U.S. Secret Service</u>, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong

interest of individuals, whether they be suspects, witnesses, or investigators, in not being

associated unwarrantedly with alleged criminal activity'" (quoting <u>Dunkelberger v.  Dept.  of</u>

<u>Justice</u>, 906 F.2d 779, 781 (D.C. Cir.  1990)).  Indeed, an agency may categorically assert

Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law

enforcement files in such a way as to associate them with criminal activity.  <u>Reporters</u>

<u>Committee</u>, 489 U.S. at 780; <u>Nation Magazine v. U.S. Customs Service</u>, 71 F.3d 885, 893, 895-

896 (D.C. Cir. 1995); <u>SafeCard Services</u>, 926 F.2d at 1206.

 Likewise, the names of law enforcement officers who work on criminal investigations

have traditionally been protected against release by Exemption 7(C).  <u>Davis</u>, 968 F.2d at 1281;

<u>Lesar v. U.S. Department of Justice</u>, 636 F.2d 472, 487-488 (D.C. Cir. 1980).  Similarly,

individuals who provide information to law enforcement authorities, like the law enforcement

personnel themselves, have protectable privacy interests in their anonymity.  <u>Computer</u>

<u>Professionals for Social Responsibility</u>, 72 F.3d at 904; <u>Farese v. U.S. Department of Justice</u>, 683

F. Supp. 273, 275 (D.D.C. 1987).

 Here, Exemption (b)(7)(C) is being cited to justify the withholding of the names,

signatures, and telephone numbers of Secret Service personnel.  Lyerly Decl.¶22.  The United

States Secret Service is a criminal law enforcement and investigative agency.  The Secret

Service's law enforcement authority is granted to the Secret Service pursuant to Title 18 of the

United States Code, Section 3056.  The records responsive to plaintiff's FOIA request were

compiled in connection with a Secret Service criminal investigation.  <u>Id</u>. at ¶ 16.  As such, these

records meet the threshold requirement of exemption 7 as having been compiled for law enforcement purposes.  Exemption (b)(7)(C) has been cited to justify the withholding of the names and signatures  of Secret Service special agents.  The identity of federal law enforcement personnel referred to in a criminal investigatory file are withheld in order to avoid subjecting public servants to harassment and annoyance either in the conduct of their official duties or their private lives. Id.  The Secret Service has also withheld under exemption (b)(7)(C) names and other identifying information concerning third parties  whose names and identifying information appear on documents in these two files, who provided information to the Secret Service in connection with a criminal investigation, and names and identifying information concerning third parties who were charged with, or suspected of, criminal activity. Id. ¶ 24.  There is no legitimate public interest in the information withheld pursuant to Exemption (b)(7) (C ).

In addition, this exemption has been applied to the names and other identifying information of Secret Service personnel and third parties in the Asset Forfeiture File.  Exemption (b)(7)(C) is also cited in the Investigative File if and when this file is released in the future once the (b)(7)(A) exemption is no longer applicable to the information in this file

### USSS Properly Applied Exemption (b)(7)(D) [Confidential Sources and Information by Confidential Sources]

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the

Government's channels of confidential information."  Birch v. United States Postal Serv., 803

F.2d 1206, 1212 (D.C. Cir. 1986).[4]

When invoking Exemption 7(D), the agency must demonstrate, through the use of

reasonably detailed affidavits, that the information was compiled for a law enforcement purpose,

that an informant provided the information under either an express or an implied promise of

confidentiality and, under the first clause of 7(D), that disclosure could reasonably be expected to

disclose the source's identity.  United States Dep't of Justice v. Landano, 508 U.S. 165, 171-72

(1993).

Law Enforcement purpose.  As explained previously in the discussion of Exemption 7(C),

"the term 'law enforcement purpose' is not limited to criminal investigations but can also include

civil investigations and proceedings in its scope."  Mittleman v. Office of Personnel

Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997), citing

Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982).  When, however, a criminal law

enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by

---

[4] The term "confidential source" is very broad.  See, e.g., Gula v. Meese, 699 F. Supp. 956, 960 (D.D.C. 1988) (crime victims); Putnam v. United States Dep't of Justice, 873 F. Supp. 705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others.  Dow Jones & Co. v. Department of Justice, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  As such, "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential."  United States Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993).

other agencies." <u>Keys v. U.S. Dept. of Justice</u>, 830 F.2d 337, 340 (D.C. Cir. 1987), citing <u>Pratt</u>, 673 F.2d at 418.  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'"  <u>Keys</u>, 830 F.2d at 340, quoting <u>Pratt</u>, 673 F.2d at 421.

<u>Confidentiality</u>.  If an individual has not been given an <u>express</u> promise of confidentiality, the agency may demonstrate that a source has been given an <u>implied</u> promise of confidentiality based upon the circumstances of the case.  <u>Landano</u>, 508 U.S. at 179-80.  The government may establish implied assurances of confidentiality by describing "generic circumstances in which an implied assurance of confidentiality fairly can be inferred."  <u>Id</u>. at 179.  For example, paid informants and those who only communicate "'at locations and under conditions which assure the contact will not be noticed' . . . justify the inference."  <u>Id</u>.

The Court in <u>Landano</u> stressed two factors to be considered in determining whether an implied promise of confidentiality exists:  "the nature of the crime investigated and the witness' relation to it."  <u>Id</u>. at 181.  In applying these factors, a key consideration is the potential for retaliation against the source.  <u>Id</u>. at 179-180; <u>see also</u>, <u>Williams v. FBI</u>, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (implied assurance of confidentiality found where crimes investigated were serious and violent and sources were "sufficiently close to" targets of investigation); <u>Hale v. Dept. of Justice</u>, 99 F.3d 1025, 1031 (10th Cir. 1996).

<u>Information Exempted</u>.  Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well.  The first clause of Exemption 7(D) not only protects obviously identifying

20

information, such as an informant's name and address, but also all information which would tend to reveal the source's identity.  Pollard v. FBI, 705 F.2d 1151, 1155 (9th Cir. 1983).  See also Birch, 803 F.2d at 1212 (protecting identity of third-party who acted as intermediary for confidential source); Stone v. Defense Investigative Serv., 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); Doe v. U.S. Dept. of Justice, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity"). The second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.

Importantly, unlike some other FOIA exemptions, Exemption 7(D) does not require a balancing of public and private interests.  Parker v. Department of Justice, 934 F.2d 375, 380 (D.C. Cir. 1991) (the "judiciary is not to balance interests under Exemption 7(D)"); Jones v. FBI, 41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure").  Therefore, "once the agency receives information from a "'confidential source" during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection.'"  Parker, 934 F.2d at 380 (editing by the court, quoting Lesar v. United States Dep't of Justice, 636 F.2d 472, 492 & n. 114 (D.C. Cir. 1980)).  Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, Ortiz v. HHS, 70 F.3d 729, 733 (2d Cir. 1995), cert. denied, 517 U.S. 1136 (1996), and after the death of the source.  Campbell v. Dept. of Justice, 164 F.3d 20, 33 n.14 (D.C. Cir.

1998).

Waiver of confidentiality.  Once an express or implied promise of confidentiality has

been established, it is extremely difficult to overcome.  In order to do so, the plaintiff must come

forward with "'absolutely solid evidence showing that the source . . . in a law enforcement

investigation has manifested complete disregard for confidentiality.'".  Parker, 934 F.2d at 378,

quoting Dow Jones & Co. v. Department of Justice, 908 F.2d 1006, 1011 (D.C. Cir.), reh'g

denied en banc, 917 F.2d 571 (D.C. Cir. 1990).  Alternatively, a waiver can be shown by prior

disclosure through authorized channels.  This requires the requester to show both that "'the exact

information given to the [law enforcement authority] has already become public, and the fact that

the informant gave the same information to the [law enforcement authority] is also public.'"

Parker, 934 F.2d at 378, quoting Dow Jones & Co., 908 F.2d at 1011.  "The mere fact that a

confidential informant has testified at trial does not waive Exemption 7(D) protection for the

identity of the confidential source or information furnished by that source." Smith v. Bureau of

Alcohol, Tobacco and Firearms, 977 F. Supp. 496, 501 (D.D.C. 1997), citing Parker, 934 F.2d at

379-80.

USSS has adequately justified its invocation of (b)(7)(D) concerning its Investigative File

and that of another law enforcement agency whose record contains the confidential informant

material. Lyerly Decl. ¶¶ 28-29. The information provided is from an individual considered as

confidential source whose information was received in the course of a criminal law enforcement

investigation. Id.  This information is currently in litigation and the information and parties are

still subject to protection.  Therefore, assurances of confidentiality are given without limitations

of time.

D.    SEGREGABILITY

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements". Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

In this case, USSS has demonstrated with reasonable specificity that all reasonably segregable information has been released. The declaration of Kathy Lyerly describes in detail the non-segregable information, and the reasons why partial releases cannot be made. See Lyerly Decl. ¶ 32. USSS has plainly met its burden here.

23

### III.  **CONCLUSION**

_____For the foregoing reasons, defendants FBI and USSS respectfully request entry of

summary judgment.  A proposed order setting forth the relief requested is attached.


Respectfully submitted,


_____
JEFFREY A. TAYLOR, BAR # 498610
United States Attorney


_____
RUDOLPH  CONTRERAS, Bar # 434122
Assistant United States Attorney


_____
BENTON G. PETERSON,  Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C.  20530
(202) 514-7238 514-8780 (Facsimile)
 Benton.Peterson@usdoj.gov


Date: April 16, 2007

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| DONVILLE JAMES | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|     v. | )    Civ. No. 06-1951 (GK) |
| | ) |
| UNITED STATES SECRET SERVICE | ) |
| FEDERAL BUREAU OF INVESTIGATION | ) |
| DEPARTMENT OF JUSTICE | ) |
|       Defendants. | ) |

**ORDER**

      This matter comes before the Court on Defendants' Motion for Summary Judgment.

Upon consideration of the Motion, the opposition, the reply, and the entire record herein, it is by

the Court this _____ day of _____, 2007 hereby

      ORDERED that Defendants' Motion for Summary Judgment is hereby GRANTED; and

it is further

      ORDERED that with respect to these, the above captioned matter is hereby DISMISSED

WITH PREJUDICE.


SO ORDERED.


                               _____
                                 UNITED STATES DISTRICT JUDGE

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this ____th day of April, 2007 a copy of the foregoing Motion for

Summary Judgment for Defendants, Statement of Material Facts, Memorandum in Support

Thereof, all attachments, and proposed order has been served by first class United States mail,

postage prepaid, to:

DONVILLE JAMES
R14388-424
Greenville Federal Correctional Institution
P. O. Box 5000
Unit 2B
Greenville, IL 62246
*pro se*

_____
Benton G. Peterson,
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

DONVILLE JAMES                    )
                                  )
        Plaintiff,             )
                                  )
    v.                          )     Civ. No. 06-1951 (GK)
                                  )
UNITED STATES SECRET SERVICE      )
FEDERAL BUREAU OF INVESTIGATION   )
DEPARTMENT OF JUSTICE             )
        Defendants.            )
_____)

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## THERE IS NO GENUINE ISSUE

_____Pursuant to Local Rule 7.1(h), the defendant hereby submits the following material facts as to which there is no genuine dispute:

**Plaintiff's Request to Defendant FBI**

1) By letter dated August 17, 2005, plaintiff submitted a request for any records maintained at Defendant FBI pertaining to himself and information on Allen Duban.[1] Plaintiff included a completed Certification of Identity form on himself.  (Hardy Decl.¶5,  **Exhibit A.)**

2) By letter dated September 9, 2005, Defendant FBI advised plaintiff that a search of the automated indices to the Central Records System Headquarters located no records responsive to his FOIA/Privacy Act ("FOIPA") request. (Request Number 1028354-000).  Defendant FBI advised plaintiff of his right to file an administrative appeal to the Department of Justice, Office of Information and Privacy ("OIP"). (Hardy Decl. ¶6, **Exhibit B.)**

_____

[1]In requesting information from the FBI, plaintiff utilized both Allen "Duban" and Allen "Dubon" spellings within various correspondence. Hardy Decl. ¶ 5.  However, as explained below and in the attached declarations, the correct spelling of this third party name is not relevant to the determination of this matter as to either defendant.

3)  By letter dated September 27, 2005, plaintiff submitted another request to Defendant

FBI for any records maintained at the Chicago Field Office (CGFO)  pertaining to himself and

third party Allen Duban, specifically he requested the compile file #281-CG-117362-BCI; 270F-

CG-117142-A. (Hardy Decl. ¶7.)

4)  By letter dated October 11, 2005,Defendant FBI acknowledged receipt of plaintiff's

FOIA/Privacy Act request to the CGFO and assigned it FOIPA Request Number 1030515.

(Hardy Decl. ¶8, **Exhibit D.)**

5) By letter dated December 14, 2005, Defendant FBI advised plaintiff that it had

reviewed 77 pages  responsive to his request, and that13 pages were being released to plaintiff.

Plaintiff was advised that information was being withheld pursuant to Privacy Act exemption

(j)(2) and FOIA exemptions (b)(2), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Plaintiff was also

advised that the Defendant FBI had located documents which originated with, or contained

information concerning other Government agency(ies) ("OGA") and had referred this

information to the OGA[2] for direct response to plaintiff.    The Defendant FBI advised plaintiff of

his right to file an administrative appeal to the OIP. **(** Hardy Decl. ¶9, **Exhibit E).**

6) Upon receipt of the complaint in this litigation, the FBI conducted a second search.

(Hardy Decl. ¶ 24).   By letter dated January 30, 2007, Defendant FBI advised plaintiff that an

additional 2 pages responsive to his request would be released. Id.¶ 10. Plaintiff was advised that

excisions were made pursuant to Privacy Act exemption (j)(2) and FOIA exemptions (b)(2),

(b)(6), (b)(7)(C), and (b)(7)(D).  Defendant FBI stated that a search of its electronic surveillance

records failed to locate any responsive records.  It also explained that absent a privacy waiver or

---

[2]The United States Secret Service.

2

proof of death, it could neither confirm nor deny the existence of records concerning third party

Allen Duban. Defendant FBI advised plaintiff of his right to file an administrative appeal to the

OIP. (Hardy Decl. ¶ 10, **Exhibit F.)**.

7) Defendant FBI contacted the Office of Information Policy (OIP), the office authorized

to review FOIA appeals of FBI release determinations. OIP advised that it has no record of

plaintiff filing an administrative appeal stemming from Defendant FBI's September 9, 2005,

December 14, 2005, and January 30, 2007 letters to plaintiff. Therefore plaintiff has failed to

exhaust the administrative remedies available to him prior to filing this complaint. Hardy Decl. ¶

29.

### Plaintiff's Request to Defendant USSS

8)      By letter dated August 22, 2005, and received by the Defendant USSS on

September 15, 2005, the plaintiff submitted a request for any and all information in USSS files

concerning any investigation of him. Plaintiff also requested information regarding a third party,

Allen Duban. ( Lyerly Decl. ¶ 4).

9)      Plaintiff's request for information regarding himself was assigned File No.

20050573. The portion of his request for information regarding Allen Duban was assigned File

No. 20050574. (Lyerly Decl. ¶ 5).

10) The Master Central Index (MCI) provides a system of record keeping of information

for cases and subjects of record in investigative, protective, and administrative files maintained

by the Secret Service. (Lyerly Decl. ¶11). An MCI search for records concerning the plaintiff

produced three potential files indexed to plaintiff's name which were being maintained in the

Chicago Field Office of the Secret Service. Id. ¶ 12. One of these files dealt with a criminal

investigation involving the plaintiff (hereinafter "Investigative File) and a second file concerned an automobile accident between the plaintiff and a Secret Service employee.  Only the first file was considered to be responsive to plaintiff's request. Id.

11) A more recent search, during the course of this litigation, by the Chicago Field Office was able to locate documents that had been indexed under the third file number. This file concerned an asset forfeiture action regarding material seized from the plaintiff during the course of the criminal investigation of him.  This file is hereinafter referred to as the "Asset Forfeiture File". Id. ¶14.

12) The Investigative File and the Asset Forfeiture File located in response to plaintiff's information request were compiled in connection with the Secret Service's investigation of criminal charges against the plaintiff. Lyerly Decl. ¶17. Thus, in addition to exemption 7(A), Defendant USSS invoked  exemption 7(C) to the names and other identifying information of Secret Service personnel and third parties in the Asset Forfeiture File. Id. ¶ 24.

13)  By letter dated January 18, 2007, the Defendant USSS informed the plaintiff that no responsive material could be released to him at this time pursuant to 5 U.S.C. (b)(7)(A), since disclosure of this material could reasonably be expected to interfere with ongoing enforcement proceedings.  Lyerly Decl. ¶ 6.

_____

Respectfully submitted,

_____
JEFFREY A. TAYLOR, BAR # 498610
United States Attorney

_____
RUDOLPH  CONTRERAS, Bar # 434122
Assistant United States Attorney

_____
BENTON G. PETERSON,  Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C.  20530
(202) 514-7238 514-8780 (Facsimile)
 Benton.Peterson@usdoj.gov

Date: April 16, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DONVILLE JAMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) Civil Action No. 06-CV-1951 (GK) | |
| v. ) | |
| ) | |
| UNITED STATES SECRET SERVICE and ) | |
| FEDERAL BUREAU OF ) | |
| INVESTIGATION, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney and have been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief, I supervise approximately 201 employees who staff a total of ten (10) units and a field operational service center unit whose collective

mission is to effectively plan, develop, direct and manage responses to requests for access to FBI

records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended;

Presidential, Attorney General and FBI policies and procedures; judicial decisions and other

Presidential and Congressional directives. The statements contained in this declaration are based

upon my personal knowledge, upon information provided to me in my official capacity, and upon

conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware

of the treatment of the FOIA/Privacy Act requests of plaintiff Donville James which seek access

to records pertaining to himself at FBIHQ and the FBI's Chicago Field Office ("CGFO").

(4)    The purpose of this declaration is to provide the Court and plaintiff with an

explanation of the administrative history of the handling of plaintiff's FOIA/Privacy Act

requests. This declaration is submitted in support of defendant FBI's motion to dismiss, or in the

alternative, for summary judgement based on plaintiff's failure to exhaust administrative

remedies.

## PROCEDURAL HISTORY OF PLAINTIFF'S FOIA/PRIVACY ACT REQUEST TO FBIHQ

(5)    By letter dated August 17, 2005, plaintiff submitted a request for any records

maintained at FBIHQ pertaining to himself. Plaintiff specifically stated: "This is a request for

any and all information in your files, concerning any investigation of the requester by your

department." Plaintiff also requested information on a third party individual, Allen Duban[1].

Plaintiff included a completed Certification of Identity form on himself. **(See Exhibit A.)**

(6)    By letter dated September 9, 2005, FBIHQ advised plaintiff that a search of the

automated indices to the Central Records System at FBIHQ located no records responsive to his

FOIA/Privacy Act ("FOIPA") request on himself (Request Number 1028354-000).  The FBI

advised plaintiff of his right to file an administrative appeal to the Department of Justice, Office

of Information and Privacy ("OIP").  **(See Exhibit B.)**

## PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA/PRIVACY ACT REQUEST TO CGFO

(7)    By letter dated September 27, 2005, plaintiff submitted a  request for any records

maintained at the CGFO pertaining to himself and third party Allen Dubon.  Plaintiff specifically

stated: "The records sought specifically but not limited to are the compile file #281-CG-117362-

BCI; 270F-CG-117142-A:

> 1.  The date Allen Dubon first came in contacted with the F.B.I.
>
> 2.  Autherization of a joint F.B.I, Secret servise investigation of Donville
> James in Secret Service case # J-201-735-131941-S.
>
> 3.  Record of all F.B.I investigation involving Donville James between
> August 2001 through March 2002.
>
> 4.  Record of Allen Dubon's permission to the F.B.I for the F.B.I to
> record phone conversation between Allen Dubon and Donville James
> in case # J-20107350131941-S or in any other investigation done
> by the F.B.I involving Donville James.

---

[1]See Hardy declaration ¶¶ 26 through 33 concerning third-party requests.  It is also noted,
plaintiff spelled the third-party's last name "Duban" in his request to FBIHQ, and "Dubon" in his
request to the CGFO.

5.  Record of Allen Dubon's permission to the F.B.I for the F.B.I to place a recording and transmitting device on Allen Dubon's body to record conversation between Allen Dubon and Donville James in case # J-201-735-131941-S or in any other investigation done by the F.B.i involving Donville James.

6.  Record of all agrement between Allen Dubon and F.B.I for Allen Dubon's coperation with the F.B.I, to include case # J-201-735-131941-S, and all other case inwhich allen Dubon coperated in with the F.B.I.

7.  All F.B.I reort compiled by SA Frank Sodetz involving Donville James between August 2001 through March 2002.

8.  All F.B.I report conpoled by SA Frank Depodesta invovling Donville James between August 2001 through March 2002.

9.  F.B.I summory report on F.B.I transfer of the investigation involving Donville James over to the Secret Service on February, 8, 2002, or at any other date.

10.  Authorization for SA Frank Depodesta to investigat Donville James after February 8, 2002.

11.  Name of suppervisor who gave SA Frank Depodesta authorization to investigate Donville James after February 8, 2002.

12.  All recorded conversation and/or transcripts of conversation between Donville James and Allen Dubon between August 2001 and March 2002." **(See Exhibit C.)**

(8)    By letter dated October 11, 2005, FBIHQ acknowledged receipt of plaintiff's

FOIA/Privacy Act request to the CGFO and assigned it FOIPA Request Number 1030515. **(See**

**Exhibit D.)**

(9)    By letter dated December 14, 2005, FBIHQ advised that it had reviewed 77 pages

responsive to plaintiff's request, and that13 pages were being released to plaintiff.  Plaintiff was

advised that information was being withheld pursuant to Privacy Act exemption (j)(2) and FOIA

exemptions (b)(2), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Plaintiff was also advised that the FBI had located documents which originated with, or contained information concerning other Government agency(ies) ("OGA") and had referred this information to the OGA[2] for direct response to plaintiff. The FBI advised plaintiff of his right to file an administrative appeal to the OIP. (**See Exhibit E.**)

    (10)    By letter dated January 30, 2007, FBIHQ advised that it had reviewed an additional 2 pages responsive to plaintiff's request, and was releasing both pages to plaintiff. Plaintiff was advised that excisions were made pursuant to Privacy Act exemption (j)(2) and FOIA exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(D). The FBI stated that a search of its electronic surveillance records failed to locate any responsive records. It also explained that absent a privacy waiver or proof of death, it could neither confirm nor deny the existence of records concerning third party Allen Dubon. The FBI advised plaintiff of his right to file an administrative appeal to the OIP. (**See Exhibit F.**)

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

    (11)    The Central Records System ("CRS") enables the FBI to maintain information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. CRS is organized into a numerical sequence of files called FBI "classifications," which are broken down according to subject matter. The subject matter of a file may correspond to an individual, organization, company, publication,

---

[2]United States Secret Service.

activity, or foreign intelligence matter (or program). Certain records in the CRS are maintained
at FBIHQ, whereas records that are pertinent to specific field offices of the FBI are maintained in
those field offices. While the CRS is primarily designed to serve as an investigative tool, the FBI
searches the CRS for documents that are potentially responsive to FOIA and Privacy Act
requests. The mechanism that the FBI uses to search the CRS is the Automated Case Support
System ("ACS").

(12)    The ACS was implemented for all Field Offices, Legal Attaches ("Legats"), and
FBIHQ in order to consolidate portions of the CRS that were previously automated. ACS can be
described as an internal computerized subsystem of the CRS. Because the CRS cannot
electronically query the case files for data, such as an individual's name or social security
number, the required information is duplicated and moved to the ACS so that it can be searched.
More than 105 million records from the CRS were converted from automated systems previously
utilized by the FBI. Automation did not change the CRS; instead, automation has facilitated
more economic and expeditious access to records maintained in the CRS.

(13)    The retrieval of data from the CRS is made possible through the ACS using the
General Indices, which are arranged in alphabetical order.[3] The entries in the General Indices fall
into two categories:

>    (a) A "main" entry -- A "main" entry, or "main" file, carries the
>    name corresponding with a subject of a file contained in the CRS.
>
>    (b) A "reference" entry --"Reference" entries, sometimes called

---

[3] The General Indices are not only automated but also include index cards which allow a
manual search for records that pre-dated the implementation of ACS on October 16, 1995.

"cross-references," are generally only a mere mention or reference
to an individual, organization, or other subject matter, contained in
a document located in another "main" file on a different subject
matter.

(14)    Searches made in the General Indices to locate records concerning a particular

subject, such as Donville James, are made by searching the subject requested in the index.

(15)    The ACS consists of three integrated, yet separately functional, automated

applications that support case management functions for all FBI investigative and administrative

cases:

(a)  Investigative Case Management ("ICM") – ICM provides the ability to open,

assign, and close investigative and administrative cases as well as set, assign, and track leads.

The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens

a case.  The field offices that receive leads from the OO are referred to as Lead Offices ("LOs").

When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by

all FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the

investigation.  Using the file number "281C-CG-117362,"which is one of the files responsive in

this case, an explanation of the UCFN is as follows:  "281" indicates the classification for the

specific type of investigation, which in this case denotes a "criminal enterprise"; "CG" is the

abbreviated form used for the OO of the investigation, which in this case is the Chicago Field

Office; and "117362" denotes the individual case file number for the particular investigation.

(b)  Electronic Case File ("ECF") – ECF serves as the central electronic repository

for the FBI's official text-based documents.  ECF supports the universal serial concept in that

only the creator of a document serializes it into a file.  This provides a single-source entry of

serials into the computerized ECF system. All original serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 98.2 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

(16)    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on the investigation, the supervisor in the field office conducting the investigation, and the supervising SA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., Donville James.

## ELECTRONIC SURVEILLANCE (ELSUR) INDICES

(17)    The Electronic Surveillance ("ELSUR") indices are used to maintain information

on a subject whose electronic and/or voice communications have been intercepted as the result of a consensual electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI. The ELSUR indices date back to January 1, 1960. On or about October 9, 1991, the ELSUR indices were automated. Since that time, FBIHQ and all FBI field offices have electronically generated, maintained, modified and accessed all ELSUR records.

(18)     The ELSUR indices are a separate system of records from the CRS. Prior to automation, the ELSUR indices consisted of index cards on individuals who had been the subject of a microphone or telephone surveillance by the FBI from 1960. As stated above, the previous manual index card system was converted to an automated system on or about October 9, 1991. These indices include individuals who were the (a) targets of direct surveillance, (b) participants in monitored conversations, and (c) owners, leasers, or licensors of the premises where the FBI conducted electronic surveillance. In addition to the names of individuals in the above categories, the card entries in the ELSUR index contain the date the voice was monitored, a source number to identify the individual on whom the surveillance was installed, and the location of the FBI field office that conducted the monitoring.

(19)     The ELSUR indices are published as a separate records system in the Federal Register because not all names contained in the ELSUR index can be retrieved through the General Index and CRS. See 52 Fed. Reg. 8482 (1992).

(20)     The FBI field offices that have conducted electronic surveillances at any time from 1960 to the present also maintain ELSUR indices. Since January 1, 1960, the field offices have been including in their ELSUR indices -- reporting to FBIHQ for inclusion in its index --

the names of all persons whose voices have been monitored through a FBI microphone

installation or a telephone surveillance. The names of monitored subjects are retrievable through

the FBIHQ or local field office ELSUR indices.

(21)    Until 1969, FBI field offices were also required to forward the names of all

persons mentioned during monitored conversations to FBIHQ for inclusion in the FBIHQ

ELSUR index. Although FBIHQ discontinued this requirement in 1969, some field offices still

include the names of individuals mentioned in monitored conversations in the field office's

ELSUR index. However, the names of such persons cannot be retrieved through the FBIHQ

ELSUR index.

## SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUESTS

(22)    In response to both plaintiff's requests for information concerning himself, the FBI

initiated standard searches of records in the CRS to identify all potentially responsive main files.

Searches were conducted using the name "Donville James" which would cover a phonetic

breakdown of both names. For example, these searches would locate records using the phonetic

sounds of each last and first name relating to the following names: "James, Donville" and "James,

D." The FBI also used plaintiff's date of birth and social security number to facilitate the

identification of requested records. The CGFO search located one CGFO main file, and one

CGFO sub-file; the FBIHQ search located no responsive records.

(23)    The ELSUR Index at FBIHQ was searched for any ELSUR records concerning

Donville James with negative results.

## FBI FOIPA POLICY CONCERNING ROUTINE AUTOMATED SEARCHES

**AND SEARCHES OF THE CRS FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUESTS**

(24)    Upon receipt of the complaint in this litigation, the FBI conducted a second search. In the absence of a specific request for a search of cross-references at the administrative level, the FBI's current policy is to search for and identify only "main" files responsive to FOIPA requests. In this case, plaintiff did not file an administrative appeal for either request. In spite of this, the FBI decided to search its FBIHQ and CGFO indices to the CRS for cross-references. This second search failed to locate any pertinent main files or cross-references at FBIHQ, but did identify one responsive cross-reference in a CGFO file[4]. At this point, the FBI has searched all locations likely to yield documents responsive to plaintiff's FOIA/Privacy Act requests to FBIHQ and the CGFO.

(25)    It should be noted that this search only included FBIHQ and CGFO files  If the plaintiff believes that there may be responsive files in other FBI field offices, it is incumbent upon him to file requests with each individual field office that he believes maintains the records he seeks, per 28 C.F.R. Section 16.3(a) and 16.41(a) (2004).

**REQUESTS FOR RECORDS ON A THIRD PARTY**

(26)    The Privacy Act, 5 U.S.C. § 552a(b) states that:

> "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains..."

This section is followed by a list of twelve conditions permitting disclosure.  Of the twelve conditions, only the second applies to this case.  The second condition permits disclosure of such

---

[4] This cross-reference was processed and released by FBIHQ letter dated January 30, 2007.

a record if it "would be required under section 552 of this title (the FOIA)." 5 U.S.C. §

552a(b)(2).

(27)    Under FOIA and the Code of Federal Regulations, however, any material requested

by plaintiff regarding third party "Allen Dubon," if it exists still must be withheld because

plaintiff has not met the requirements for gaining the information.

(28)    A portion of both plaintiff's requests pertain to a third party.  If responsive records

exist, they are exempt from disclosure pursuant to exemptions (b)(6) and (b)(7)(C) of the FOIA.

Plaintiff's request for records concerning this individual cannot be addressed by the FBI without

either a notarized authorization form or proof of death concerning Mr. Dubon.  See 5 U.S.C. §

552a(b) and 28 C.F.R. § 16.3(a).  To release any records responsive to plaintiff's requests if they

do exist, could subject the FBI to possible action by Allen Dubon under the Privacy Act.

(29)    Under 5 U.S.C. § 552(b)(6) the FOIA exempts from disclosure:

> Personnel, medical and similar files the disclosure of which would constitute a
> clearly unwarranted invasion of personal privacy.

(30)    Under 5 U.S.C. § 552(b)(7)(C), the FOIA also exempts:

> Records or information compiled for law enforcement purposes [...] to the extent
> that the production of such law enforcement records or information could reasonably be
> expected to constitute an unwarranted invasion of personal privacy.

(31)    When a FOIPA requestor seeks information about a third party for which no

privacy waiver or proof of death is provided, the FBI generally neither confirms nor denies the

existence of responsive records.  Refusing to provide records due to the lack of privacy waiver or

proof of death essentially affirm that an individual is mentioned in FBI records.  The mere

mention of an individual's name in an FBI record reflects that the person either came to the

attention of or assisted the FBI during the course of the bureau's law enforcement activities. Affirming that records exist on a third party would violate an individual's privacy, resulting in potential embarrassment and stigma. In addition, if a requester seeks information on a third party whom the requester believes is an informant, affirming whether responsive records exist could expose the third party to serious personal risk.

(32)    Whether responsive records exist or not, the FBI has found that the "neither confirm nor deny" response provides the best and most complete protection when a requester seeks information regarding a third party for whom the requester provides no privacy waiver of proof of death. From an administrative standpoint, it would be much simpler to actually admit those instances in which records do not exist on a particular individual. Those FOIA requests could arguably then be disposed of with finality by a negative, but clear response. However, this would leave the FBI in the untenable position of having to affirmatively address those requests in which records do exist. While responsive information would be exempt from disclosure in all instances where the privacy interests outweigh the public interest in disclosure, the damage to the third party's privacy would have already occurred by the mere confirmation of the existence of responsive records. Therefore, it is the policy of the FBI to consistently "neither confirm nor deny" records in third party FOIA requests such as at issue in this case.

(33)    Despite this policy, use of the "neither confirm nor deny" response is not automatic. Exceptions occur if the Department of Justice has officially acknowledged the existence of records or the requester demonstrates that the public's interest in disclosure outweighs privacy interests. Neither of these circumstances apply in this case. The Department

-13-

of Justice has not acknowledged existence of any records and the release of any possibly existing

file(s) would shed no light on the performance of the FBI's mission to protect and defend the

United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal

laws of the United States and to provide leadership and criminal justice services to federal, state,

municipal and international agencies and partners. Therefore, the FBI can neither confirm nor

deny the existence of records responsive to plaintiff's requests.

## CONCLUSION

(34)    In preparation for this declaration, the FBI contacted the OIP, the office authorized

to review FOIA appeals of FBI release determinations. OIP advised that it has no record of

plaintiff filing an administrative appeal stemming from FBIHQ's September 9, 2005, December

14, 2005, and January 30, 2007 letters to plaintiff. Therefore plaintiff has failed to exhaust the

administrative remedies available to him prior to filing this complaint.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that **Exhibits A through F** attached hereto are true and correct copies.

Executed this ⎰⎰ day of April, 2007.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
  Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

-14-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DONVILLE JAMES, | ) |
|  | ) |
|     Plaintiff, | ) |
|  | ) |
|     v. | ) |
|  | )    Civil Action No. 06-CV-1951 (GK) |
| U.S. SECRET SERVICE and | ) |
| FEDERAL BUREAU OF | ) |
| INVESTIGATION, | ) |
|  | ) |
|     Defendants. | ) |

# EXHIBIT A

Date: August 17, 2005

Requesters Name: Donville James
Requested Number: # 14388-424
Institutional Address: P.O. Box 5000, 2-B
Greenville, IL 62246

RE: FREEDOM OF INFORMATION/PRIVACY ACT, Request:

This is an Freedom of Information/Privacy Act request, pursuant to Title 5, Section 522 and other relevant provisions of your agency's regulations. This is a request for any and all information in your files, concerning any investigation of the requester by your department. The District of Columbia, Court of Appeals, has held, pro-se litigants request should be taken liberally. LaCreda v. EOUSA, 317 F.3d 345 (D.C. Cir. 2003).

I'm seeking documents and information from: Federal Bureau of Investigation, FOI/PA Unit, Room 6296 JEH, Washington, D.C. 20535

which is a government agency and subject to the FOIA. I would also like copies of all applicable regulations of your agency in relation to its statutory duties, pursuant to FOI/PA.

If for any reason it is determined that portions of the materials requested have been redacted or exempt, I expect the agency to identify on the release what information is being withheld and to what exemption applies to the redaction. My Criminal Case Number is: 02CR278(WA) and my case occurred in: Northern District of Illinois, Eastern Division .

I also seek documents and information on Third Parties in your files that was involved in some way with my case, and/or served as a government witness or informant, the parties are: Allen Duban

the requester is entitled to all public records that have entered the public domain. See: Davis v. Department of Justice, 968 F.2d 1276, 1279 (D.C. Cir. 1992).

I expect to hear from your office within the 10-working days, pursuant to the statute of limitations of FOIA.

Respectfully Submitted,

8/17/05

See: Attached, Certification of identity

Department of Justice                    Certification of Identity



acy Act Statement. In accordance with 28 CFR Section 16.4(d) personal data sufficient to identify the individuals submitting requests ail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of riduals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department's fail-o furnish this information will result in no action being taken on the request by the System Manager. False information on this form subject the requester to criminal penalties under 18 U.S.C Section 1001 and/or 5 U.S.C. Section 522a(i) (3).

ic reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing uctions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of rmation. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice tagement Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of tagement and Budget, Public Use Reports Project (1103-0016), Washington, DC 20530

l Name of Requester ¹    **Donville James**

rent Address                 P.O. Box 5000, 2-B, Greenville, IL. 62246

te of Birth      11-24-1970

ce of Birth      Kingston, Jamaica

cial Security Number ²    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

:clare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of 18 .C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or aining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

gnature ³ _____    Date ___8/17/05___

ptional: Authorization to Release Information to Another Person

is form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another son

rther, pursuant to 5 U.S.C. § 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

_____Donville James_____
(Print or Type Name)

¹ Name of individual who is the subject of the record sought.
² Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identi-cation of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertain-g to you
³ Signature of individual who is the subject of the record sought.

FRA APPROVED OMB NO. 1103-0016
DATED 1-1029

FORM DOJ-361
FEB. 95

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONVILLE JAMES,                      )
                                     )
    Plaintiff,               )
                                     )
    v.                       )
                                     )     Civil Action No. 06-CV-1951 (GK)
U.S. SECRET SERVICE and              )
FEDERAL BUREAU OF                    )
INVESTIGATION,                       )
                                     )
    Defendants.              )
                                     )

# EXHIBIT B



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

September 9, 2005

MR DONVILLE JAMES
**14388-424
UNIT 2-B
POST OFFICE BOX 5000
GREENVILLE, IL 62246

Request No.: 1028354- 000
Subject: JAMES, DONVILLE

Dear Mr. James:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

A search of the automated indices to our central records system files at FBI Headquarters located no records responsive to your FOIPA request.

Although no records responsive to your FOIPA request were located in our automated indices, we are required to inform you that you are entitled to file an administrative appeal if you so desire. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U. S. Department of Justice, Suite 570, Flag Building, Washington, D. C. 20530, within 60 days from the date of this letter. The envelope and the letter should be clearly marked "Information Appeal." Please cite the FOIPA request number assigned to your request so that it may easily be identified.

Should you desire a check of our field office files, it will be necessary for you to direct your request to the appropriate field office.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DONVILLE JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 06-CV-1951 (GK) |
| U.S. SECRET SERVICE and | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# EXHIBIT C

AGENCY:/DEPARTMENT:                    DIRECT RESPONSE TO:

Federal Bureau of investigation       Donville James
FOIA/PA Officer                       FCI Geeenville
                                      P.O. Box 5000  #2B
                                      Greenville, Illinois 62246
TO:                                   IDENTIFICATION OF RESQUESTER:
FOIA/PA Officer                       In accordance with CRF § 16.41(d)
Federal Bureau of investigation
219 S. Deardorn St                    NAME:    Donville James
Chicago, Illinois 60604               ADDRESS: FCI Greenville
                                               P.O. Box 5000  #2B
                                               Greenville, III 62246
                                      DOB:     11/24/70
                                      PLACE OF
                                      BIRTH:   Kingston, Jamaica
                                      EMPLOYEE
                                      I.D.
                                      NUMBER:  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


RE:DISCLOSURE OF ALL INVESTIGATIVE REPORT,NAME OF ALL F.B.I
AGENTS ASIGNED TO INVESTIGATE DEFENDANT'S CASE, OR OTHERWISE
AS REQUESTED BELOW - DONVILLE JAMES - Case No. 02 CR 278
Date 10/25/05


Dear   Sir/Mam          :

     This request is made pursuantto the provision of the Freedom
of Information act 5 U.S.C. §552 and the Privacy Act 5 U.S.C. § 552a
(d)(1) for a full disclosure and release of all records and/or data
contained in the files of your Department and/or Agency under my name
and/or identifier to my name.
     The records sought specifically but not limited to are the
compile file #281-CG-I17362-BCI; 270F-CG-117142-A:

1. The date Allen Dubon first came in contacted with the F.B.I.

2. Autherization of a joint F.B.I, Secret servise investigation of
   Donville James in Secret Service case # J-2OI-735-131941-S.

3. Record of all F.B.I investigation involving Donville James
   between August 2001 through March 2002.

4. Record of Allen Dubon's permission to the F.B.I for the F.B.I to
   record phone conversation between Allen Dubon and Donville James
   in case # J-20107350131941-S or in any other investigation done by
   the F.B.I involving Donville James.

5. Record of Allen Dubon's permission to the F.B.I for the F.B.I to place a recording and transmitting device on Allen Dubon's body to record conversation between Allen Dubon and Donville James in case # J-201-735-131941-S or in any other investigation done by the F.B.i involving Donville James.

6. Record of all agrement between Allen Dubon and F.B.I for Allen Dubon's coperation with the F.B.I, to include case # J-201 735-131941-S, and all other case inwhich allen Dubon coperated in with the F.B.I.

7. All F.B.I reort compiled by SA Frank Sodetz involving Donville James between August 2001 through March 2002.

8. All F.B.I report conpoled by SA Frank Depodesta invovling Donville James between August 2001 through March 2002.

9. F.B.I summory report on F.B.I transfer of the investigation involving Donville James over to the Secret Service on February, 8, 2002, or at any other date.

10. Authorization for SA Frank Depodesta to investigat Donville James after February 8, 2002.

11. Name of suppervisor who gave SA Frank Depodesta authorization to investigate Donville James after February 8, 2002.

12. All recorded conversation and/or transcripts of conversation between Donville James and Allen Dubon between August 2001 and March 2002.

File # 281C-CG-117362-BCI, and file # 270-CG-117142-A contains material in the F.B.I investigation of Donville James from approximately August 2001 through March 2002. The investigation of Donville James took place in the Norther District of Illinois approximately between August 2001 through February 8,2002.

If the information, records and/or data requested are placed, filed, secured and/or held in a separate, different and/or distinct file by or under another name, number or identifier other than the case docket number and/or identifier(s) Listed above I authorize and request your Department and/or Agency to open and/or access that file for all the information, records and/or data requested herein.

It is further requested that your Department and/or Agency in response to all the information requested, specifically inform me if and to what governmental body and/or to whom and/or what "person" previously described, has been released and/or disclosed any of the information and/or material herein, title purpose and need for such information and/or material, the date of release, and the specific information and/or material released and/or disclosed such information and/or material and the specific reference to authority, statute or regulation governing such release and/or disclosure 5 U.S.C § 552a(b)(1)---(12), (c)(1)---(4), or law, Abraham & Rose, P.L.C. v. U.S. 138 F.3d 1075 (1998); Ray v. Dept. of Justice 720 F.2d (1983).

Your Department and/or Agency is advised that the information, data or report in total no longer accord exempt status unless under spesific exemptions noted, and only with reference to specific citation of authority, Nemetz v. Department of Treasury, 446 F.Supp. 102 (1987); Akins v. Federal Election Com'n, 101 F.3d 731 (1996); Gummoc v. Gore, 180 F.3d 282 (1999); Solar Source Inc v. U.S., 142 F.3d 1033 (1998).

I agree to pay any reasonable costs or fees applicable to this request, above and/or beyond the specified allotment of cost or fees applicable at no charge pursuant to The Uniform Practices Code, The OMB Uniform FOIA fee Schedule & Guidelines § 6(b) Fed Reg 10017, in copliance with 31 U.S.C. § 9701, or if I, an considered indigent, I ask that your Department and/or Agency wave all charges pursuant to 5 U.S.C. §552a(i)(3) st seq.

Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), it is noted that your Department and/or Agency has ten (10) working days following receipt of this request to provide me this information and/or material sought. Should any delay occur, it is requested that your Department and/or Agency inform me of this delay as privided by 5 U.S.C. § 552(A)(6)(B), and the sate when your Department and/or Agency will be able to act. In the event that I do not receive the response in the specified time provided by statute, I will then be forced topursue other remedy, Public Citizen v. F.T.C. 869 F.2d 1541 (1989); Blazy v. Tenet, 194 F.3d 90 (1999); GMRI Inc. v. E.E.O.C., 149 F.3d 449 (1998).

I certified under penalty of perjury under the laws of The United States of America in the nature of [28 U.S.C. § 1746(1)], that I have read the foregoing request for information and know the content therof, and that the information listed above is true, correct and complete to the best of my ability.

Executed this ___27___ dayof ___September___, 2005

Donville James, Requester.

Donville James #14365-42
FCI Greenville
P.O. Box 5000 #2B
Greenville, Illinois 62246

FOIA/PA Officer
Federal bereau of investigation
219 S. Dearborn St
Chicago, Illinois 60604

60604-1791

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONVILLE JAMES,               )
                             )
        Plaintiff,            )
                             )
    v.                       )
                             )    Civil Action No. 06-CV-1951 (GK)
U.S. SECRET SERVICE and       )
FEDERAL BUREAU OF            )
INVESTIGATION,               )
                             )
        Defendants.          )
                             )

# EXHIBIT D



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

October 11, 2005

MR DONVILLE JAMES
**14388-424
UNIT 2B
POST OFFICE BOX 5000
GREENVILLE, IL 62246

Request No.: 1030515- 000
Subject: JAMES, DONVILLE

Dear Mr. James:

☒     This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request. Your request was forwarded to FBI Headquarters from the Chicago Field Office.

☐     For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐     To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐     If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☐     We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐     Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DONVILLE JAMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 06-CV-1951 (GK) |
| U.S. SECRET SERVICE and | ) |
| FEDERAL BUREAU OF | ) |
| INVESTIGATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

# EXHIBIT E



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

December 14, 2005

MR DONVILLE JAMES
**14388-424
UNIT 2B
POST OFFICE BOX 5000
GREENVILLE, IL 62246

Subject: JAMES, DONVILLE

FOIPA No. 1030515- 000

Dear Requester:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

<table>
<tr><td colspan="2" align="center"><b>Section 552</b></td><td align="center"><b>Section 552a</b></td></tr>
<tr><td>☐(b)(1)</td><td>☐(b)(7)(A)</td><td>☐(d)(5)</td></tr>
<tr><td>☒(b)(2)</td><td>☐(b)(7)(B)</td><td>☒(j)(2)</td></tr>
<tr><td>☐(b)(3)_____</td><td>☒(b)(7)(C)</td><td>☐(k)(1)</td></tr>
<tr><td>_____</td><td>☒(b)(7)(D)</td><td>☐(k)(2)</td></tr>
<tr><td>_____</td><td>☒(b)(7)(E)</td><td>☐(k)(3)</td></tr>
<tr><td>_____</td><td>☐(b)(7)(F)</td><td>☐(k)(4)</td></tr>
<tr><td>☐(b)(4)</td><td>☐(b)(8)</td><td>☐(k)(5)</td></tr>
<tr><td>☐(b)(5)</td><td>☐(b)(9)</td><td>☐(k)(6)</td></tr>
<tr><td>☒(b)(6)</td><td></td><td>☐(k)(7)</td></tr>
</table>

77 **page(s)** were reviewed and 13 **page(s)** are being released.

☒ Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

    ☒ referred to the OGA for review and direct response to you.

    ☐ referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☒ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

❏ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☒ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

Enclosure(s) 2

The enclosed documents responsive to your request are exempt from disclosure in their entirety pursuant to the Privacy Act, Title 5, United States Code, Section 552(a), subsection (j)(2). However, these records have been processed pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, thereby affording you the greatest degree of access authorized by both laws.

To minimize costs to both you and the FBI, extra file copies of the same document were not processed.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONVILLE JAMES,                           )
                                          )
          Plaintiff,                      )
                                          )
     v.                                   )
                                          )    Civil Action No. 06-CV-1951 (GK)
U.S. SECRET SERVICE and                   )
FEDERAL BUREAU OF                         )
INVESTIGATION,                            )
                                          )
          Defendants.                     )

# EXHIBIT F



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

MR DONVILLE JAMES
\*\*14388-424
UNIT 2B
POST OFFICE BOX 5000
GREENVILLE, IL 62246

January 30, 2007

Subject: JAMES, DONVILLE

FOIPA No. 1030515- 001

Dear Requester:

     The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☒(b)(2) | ☐(b)(7)(B) | ☒(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☒(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

2 **page(s)** were reviewed and 2 **page(s)** are being released.

☐  Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

    ☐  referred to the OGA for review and direct response to you.

    ☐  referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☒  You have the right to appeal any denials in this release. Appeals should be directed in writing to the Director, Office of Information and Privacy, U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

☐  The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s).

If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

⊗ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
    Dissemination Section
Records Management Division

Enclosure(s)

Enclosed is a supplemental release of documents pertaining to James Donville.

Reference your letter dated September 27, 2005, requesting documents on subject, Allen Dubon. The FBI can neither confirm or deny the existence of the records you are seeking. Before we can process records about other individual(s), a privacy waiver or proof of death certificate must be submitted. The FOIA (5 U.S.C. 552) contains provisions to protect information pertaining to other individuals which could, if it exists, constitute an unwarranted invasion of personal privacy.

For your information, a search of the FBI's electronic surveillance indices revealed no record responsive to your Freedom of Information -Privacy Acts (FOIPA) request.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could be reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could be reasonably expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,  or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONVILLE JAMES, | ) |
| | ) |
| Plaintiff | )  Case No.    1:06CV01951 |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES SECRET SERVICE, et al., | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF KATHY J. LYERLY
## SPECIAL AGENT IN CHARGE, LIAISON DIVISION,
## OFFICE OF GOVERNMENT AND PUBLIC AFFAIRS AND
## FREEDOM OF INFORMATION AND PRIVACY ACTS OFFICER,
## UNITED STATES SECRET SERVICE

I, Kathy J. Lyerly, hereby make the following declaration:

1.      I am the Special Agent in Charge of the Liaison Division in the Office of

Government and Public Affairs and Freedom of Information and Privacy Acts (FOI/PA) Officer,

United States Secret Service (hereinafter Secret Service), Department of Homeland Security

(DHS). I have been assigned as the Secret Service FOI/PA Officer since December 28, 2003,

and have been employed with the Secret Service as a Special Agent (GS-1811) since October 26,

1987.

2.      DHS regulations, title 6, Code of Federal Regulations, section 5.4, and Appendix

A, II(I)(3), vest authority in the FOI/PA Officer, Secret Service, to make initial determinations as

to whether to grant requests for Secret Service records (68 FR 4056, 4058, and 4069) made under

the Freedom of Information Act, title 5 of the United States Code, section 552 (FOIA). DHS

1

regulations, title 6, Code of Federal Regulations, section 5.22, and Appendix A, II(I)(3) (68 FR

4056, 4065, and 4069) likewise vest authority in the FOI/PA Officer, Secret Service, to make

initial determinations as to whether to grant requests for access to Secret Service records made

under the Privacy Act of 1974, title 5 of the United States Code, section 552a ("Privacy Act").

<u>**Receipt and Processing of Plaintiff's Request**</u>

3.      As the Secret Service's FOI/PA Officer, I am familiar with the plaintiff's request

for information filed with the Secret Service.   A brief description of the relevant correspondence

and the processing of plaintiff's information request is set forth below.

4.      By letter dated August 22, 2005, and received by the Secret Service on September

15, 2005, the plaintiff submitted a request for any and all information in Secret Service files

concerning any Secret Service investigation of him.  Plaintiff also requested information

regarding a third party, Allen Duban.  A copy of this letter is attached as <u>Exhibit 1</u>.

5.      Plaintiff's request for information regarding himself was assigned File No.

20050573.  The portion of his request for information regarding Allen Duban was assigned File

No. 20050574.   Only the Secret Service's handling of File No. 20050573 is at issue in this

litigation.

6.      By letter dated January 18, 2007, the Secret Service informed the plaintiff that no

responsive material could be released to him at this time pursuant to 5 U.S.C. (b)(7)(A), since

disclosure of this material could reasonably be expected to interfere with ongoing enforcement

proceedings.  A copy of this letter is attached as <u>Exhibit 2.</u>

7.      The Secret Service received the Complaint filed in this litigation by certified mail

on December 5, 2006.

## Search for Responsive Records

8.      Based on the plaintiff's August 22, 2005, request for records concerning

investigations regarding him, the Secret Service conducted a search for responsive records. First,

a search was conducted for information indexed under the plaintiff's name in the Secret Service

Master Central Index (MCI).  Date of birth and social security were used to confirm that any files

indexed under plaintiff's name in the MCI system in fact concerned the plaintiff.

9.      The MCI is an on-line computer system used by all Secret Service field offices,

resident offices, resident agencies, protective divisions, and headquarters divisions for a variety

of applications.  This system has been designated to serve as the nucleus of an integrated

information network that provides for all of the data and message processing needs of the Secret

Service.

10.     The MCI provides a system of record keeping of information for cases and

subjects of record in investigative, protective, and administrative files maintained by the Secret

Service.  Individuals on whom the Secret Service maintains records are indexed when possible

on MCI by name, social security number, and/or date of birth.  All field offices of the Secret

Service enter into the MCI individuals who are subjects in investigative or administrative files

maintained by that office.

11.     If the Secret Service was maintaining records on the plaintiff in any Secret Service

office, his name should be in MCI along with the case number(s) of the investigative or

administrative file(s) in which he was a subject.  The MCI search for records concerning the

plaintiff produced three potential files indexed to plaintiff's name which were being maintained

in the Chicago Field Office of the Secret Service.  As a result, the FOI/PA Office asked the

3

Chicago Field Office to search its files for records responsive to plaintiff's request and forward

all records they were maintaining on the plaintiff. The Chicago Field Office forwarded to the

FOI/PA Office two files it was maintaining regarding the plaintiff. One of these files dealt with a

criminal investigation involving the plaintiff (hereinafter "Investigative File) and a second file

concerned an automobile accident between the plaintiff and a Secret Service employee. Only the

first file was considered to be responsive to plaintiff's request. The Chicago Field Office also

informed the FOI/PA Office that it was not maintaining any records under the third file number

that had been indexed under plaintiff's name.

12.    To ensure that all potential offices were searched, the FOI/PA Office also

requested that the several headquarters divisions who could potentially be maintaining files

regarding the plaintiff search their records for responsive records. This search produced an

additional copy of the Investigative File already forwarded to the FOI/PA Office by the Chicago

Field Office.

13.    In preparation of this declaration, the Chicago Field Office was again asked to

produce all documents they were maintaining on plaintiff. At this time, the Chicago Field Office

was able to locate documents that had been indexed under the third file number referred to above

that the Chicago Field Office had previously indicated that they had no records for. This file

concerned an asset forfeiture action regarding material seized from the plaintiff during the course

of the criminal investigation of him. This file is hereinafter referred to as the "Asset Forfeiture

File". The information located under this file number, which was forwarded to the FOI/PA

Office by the Chicago Field Office, is being released, with appropriate redactions under the

Freedom of Information Act, as Exhibit 3 to this declaration. Three pages of this material is

4

being withheld in its entirety as information dealing solely with a third party.

14.    Based on the searches described above, the FOI/PA Office has conducted searches reasonably likely to produce records responsive to plaintiff's request for investigative records concerning him.

### 5 U.S.C. 552(b)(7): Records or Information Compiled for Law Enforcement Purposes

15.    Title 5, United States Code, section 552(b)(7) provides that the FOIA does not apply to "records for information complied for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, . . . [or] (C) . . . could reasonably be expected to interfere with enforcement proceedings."

16.    The Secret Service is a criminal law enforcement and security agency created under title 18, United States Code, section 3056. The Investigative File and the Asset Forfeiture File located in response to plaintiff's information request were compiled in connection with the Secret Service's investigation of criminal charges against the plaintiff. These files were compiled under the authority to conduct such investigations as vested in the Secret Service under 18 U.S.C. § 3056. As such, these records meet the threshold requirement of exemption (b)(7) of having been compiled for law enforcement purposes.

### (1)    5 U.S.C. (7)(A): Records or Information Compiled For Law Enforcement Purposes Which Could Reasonably be Expected to Interfere with Enforcement Proceedings

17.    5 U.S.C. § 552(b)(7)(A) exempts from disclosure "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to interfere

with enforcement proceedings." This exemption protects, among other information, information which is compiled for and part of an ongoing investigation or other law enforcement proceeding, the release of which could interfere with the investigation or proceeding. This exemption is intended to maintain the integrity of ongoing law enforcement investigations or proceedings.

18.    In this case, the Secret Service withheld in its entirety the Investigative File pursuant to Exemption (b)(7)(A). This file consists of 361 pages. The plaintiff was convicted on September 10, 2002, of several criminal offenses as the result of an investigation by the Secret Service of plaintiff's counterfeiting activities. The documents outlining the Secret Service's investigation are contained in the Investigative File. Plaintiff has appealed his conviction in the United States Court of Appeals for the Seventh Circuit and oral argument was held on his appeal on October 16, 2006. The court, however, has yet to make a decision regarding plaintiff's appeal.

19.    Until plaintiff's conviction is final, release of the information in the Investigative File could reasonably be expected to cause substantial harm. Disclosure of these documents could damage the preservation and gathering of evidence and endanger witnesses. Disclosure of these records could also harm the government's prosecution of the plaintiff's appeal. Consequently, the Secret Service is withholding the Investigative File in its entirety under exemption (b)(7)(A).

### (2)    5 U.S.C. (b)(7)(C): Records or Information Compiled for Law Enforcement Purposes Which Could Reasonably be Expected to Constitute an Unwarranted Invasion of Personal Privacy

20.    5 U.S.C. § 552(b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This exemption protects, among other

information, that identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes.

21.    Exemption (b)(7)(C) is being cited to justify the withholding of the names, signatures, and telephone numbers of Secret Service personnel.  The identity of federal law enforcement personnel referred in a criminal investigatory file are withheld in order to avoid subjecting public servants to harassment and annoyance either in the conduct of their official duties or their private lives.

22.    In making its determination to withhold the identities, signatures, and telephone numbers of Secret Service employees under exemption (b)(7)(C), the Secret Service balanced the public's interest in disclosure against the privacy rights of the individual whose names, signatures, and telephone numbers appears in responsive documents.  The Secret Service determined that there is no public interest in this information since this information does not reveal anything about the manner in which the agency conducts its activities and does not disclose any illegal activity on the part of the agency.  Moreover, the public interest is best served by the non-disclosure of such information, since disclosure could result in the personal harassment of law enforcement personnel and, by extension, a diminishment of the ability of law enforcement personnel to perform their duties.  Furthermore, the performance of law enforcement duties often entails serious intrusions into the lives of others, which creates resentment and sometimes a desire for retaliation.  As such, the Secret Service recognizes that the release of the names, signatures, and telephone numbers of law enforcement personnel could facilitate such retaliation.  The release of this information could also subject law enforcement personnel to unofficial questioning.

23.    The Secret Service has also withheld under exemption (b)(7)(C) names and other

7

identifying information concerning third parties  whose names and identifying information appear on documents in these two files, who provided information to the Secret Service in connection with a criminal investigation, and names and identifying information concerning third parties who were charged with, or suspected of, criminal activity.  In making its determination to withhold the names and other identifying information such as addresses and telephone numbers of third parties under exemption (b)(7)(C), the Secret Service balanced the public's interest in disclosure against the rights of third parties to personal privacy, and determined that the privacy rights of third parties outweighed any public interest in disclosure. The Secret Service determined that there is no public interest in the disclosure of third party names and identifying information, because such information reveals nothing about the manner in which the agency conducts its activities and does not disclose any illegal activity on the part of the agency. The Secret Service considered the potentially stigmatizing effect resulting from the appearance of third party names in law enforcement files.  The Secret Service also recognized that disclosure of third party information might have the effect of chilling future cooperation by third parties with law enforcement agencies.  Given these factors, the Secret Service determined that the privacy rights of third parties outweighs the public's interest in disclosure.

24.     Finally, the Secret Service considered the privacy interests of third parties who were suspected of possible criminal activity, and determined that the public interest is best served by withholding their identifying information because there is no public interest in the disclosure of their identities, and disclosure could damage the reputations of such  individuals, and could stigmatize individuals who were not necessarily involved in wrongdoing. Given these factors, the Secret Service determined that the privacy rights of third parties outweighs the public's interest in

8

disclosure.

25.    In this case, this exemption has been applied to the names and other identifying information of Secret Service personnel and third parties in the Asset Forfeiture File. Exemption (b)(7)(C) is also cited in the Investigative File if and when this file is released in the future once the (b)(7)(A) exemption is no longer applicable to the information in this file.

**(3)    5. U.S.C. § 552 (b)(7)(D): Records or Information Compiled for Law Enforcement Purposes [Which] Could Reasonably be Expected to Disclose the Identity of a Confidential Source, Including a State, Local or Foreign Agency or Authority or Any Private Institution Which Furnished Information on a Confidential Basis, and, in the Case of a Record or Information Compiled by a Criminal Law Enforcement Authority in the Course of a Criminal Investigation or by an Agency Conducting a Lawful National Security Intelligence Investigation, Information Furnished by a Confidential Source.**

26.    Title 5, United States Code, section 552(b)(7)(D) exempts from disclosure "records or information compiled for law enforcement purpose [which] could reasonably be expected to disclose the identity of a confidential source , . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." In this case, the Secret Service cites (b)(7)(D) only in the Investigative File if and when this file is released in the future once the (b)(7)(A) exemption is no longer applicable to the information in this file. In addition, this exemption is being claimed on behalf of another law enforcement agency whose record contains the confidential informant material.

27.    The Secret Service cites exemption (b)(7)(D) to withhold information which was provided to a another law enforcement entity by an individual listed in the file as a confidential informant. This source is identified by name and as a confidential source. Consequently,

9

information provided by this individual is considered as confidential source information provided

in the course of a criminal law enforcement investigation and has been withheld under exemption

(b)(7)(D).

28.     In making its determination to withhold the identity of this confidential source and

information provided by this source, the Secret Service has balanced the public's interest in

disclosure against the right of the confidential informant to be free from possible retaliation and

the chilling effect on future cooperation by informants with law enforcement agencies.

These factors were determined to far outweigh any public interest in disclosure.

### (4)     5 U.S.C.§ 552 (b)(7)(E): Records or Information Compiled for Law Enforcement Purposes Which Would Disclose Techniques and Procedures for Law Enforcement Investigations or Prosecutions, or Would Disclose Guidelines for Law Enforcement Investigations or Prosecutions if Such Disclosure Could Reasonably Be Expected to Risk Circumvention of the Law

29.     5 U.S.C. § 552(b)(7)(E) exempts from disclosure "records or information compiled

for law enforcement purposes" the disclosure of which "would disclose techniques and procedures

for law enforcement investigations or prosecutions, or would disclose guidelines for law

enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law." In this case, the Secret Service cites (b)(7)(E) only in the Investigative

File if and when this file is released in the future once the (b)(7)(A) exemption is no longer

applicable to the information in this file.

30.     The Secret Service cites exemption (b)(7)(E) to withhold the types of

investigations routinely used by the Secret Service and techniques used by the Secret Service

when investigating criminal counterfeiting activity. The release of this information could benefit

those attempting to violate the law and avoid detection by the Secret Service. Public disclosure that the Secret Service routinely conducts such investigations and uses those investigative tools could nullify the future effectiveness of these investigative methods. Disclosure of such information could impede the Secret Service's efforts to investigate criminal activity in the future.

**Segregation**

31.    Every effort has been made to provide plaintiff with all reasonably segregable portions of the material requested. No reasonably segregable non-exempt portions of documents have been withheld from the plaintiff. A review of the responsive documents shows that no further information can be segregated without releasing information properly withheld under the FOIA. Accordingly, all information withheld is exempt from disclosure pursuant to the FOIA exemption or is not reasonably segregable because it is so intertwined that protected material segregation is not possible or its release would have revealed the underlying protected material.

**Conclusion**

32.    The Secret Service has made every attempt to release as much information as possible and has processed the documents to redact only the information which must be withheld. The Secret Service has made every attempt to comply with the intent of the FOIA, while protecting the personal privacy of third parties, and the interest of the general public in the efficient and effective performance of its law enforcement agencies.

11

I declare under penalty of perjury that the foregoing is true and correct.


_4- 11-07_
Date

_Kathy J. Byerly_
Special Agent in Charge,
Liaison Division, Office of Government and Public Affairs
and Freedom of Information and Privacy Acts Officer
United States Secret Service

# EXHIBIT 1

Requesters Name: Donv  le James                    Date: August 22, 2005

Requested Number: # 14388-424

Institutional Address: P.O. Box 5000, 2-B
Greenville, Illinois 62246                    RECEIVED
                                              U.S. SECRET SERVICE

RE: FREEDOM OF INFORMATION/PRIVACY ACT;  2005 SEP 15  A 10: 43

This is an Freedom of Information/Privacy Act request, pursuant to
Title 5, Section 522 and other relevant provisions of your agency's
regulations.  This is a request for any and all information in your files,
concerning any investigation of the requester by your department.  The
District of Columbia, Court of Appeals, has held, pro-se litigants requ-
est should be taken liberally.  **LaCreda v. EOUSA**, 317 F.3d 345 (D.C. Cir.
2003).

I'm seeking documents and information from: United States Secret
Service, 900 H. Street, N.W. Suite 3000, Washington, D.C. 20001

which is a government agency and subject to the FOIA.  I would also like
copies of all applicable regulations of your agency in relation to its
statutory duties, pursuant to FOI/PA.

If for any reason it is determined that portions of the materials
requested have been redacted or exempt, I expect the agency to identify
on the release what information is being withheld and to what exemption
applies to the redaction.  My Criminal Case Number is: 02CR278(WA)
_____  and my case occurred in: Northern District
of Illinois, Eastern Division                    .

I also seek documents and information on Third Parties in your files
that was involved in some way with my case, and/or served as a government
witness or informant, the parties are: Allen Duban

_____

_____

_____

_____

the requester is entitled to all public records that have entered the
public domain. **See: Davis v. Department of Justice**, 968 F.2d 1276, 1279
(D.C. Cir. 1992).

I expect to hear from your office within the 10-working days, pursuant to
the statute of limitations of FOIA.

                              Respectfully Submitted,

                              [signature]   8/17/05

                    See: Attached, Certification of identity



Privacy Act Statement. In accordance with 28 CFR Section 16.4(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully discriminated by the Department's failure to furnish this information will result in no action being taken on the request by the System Manager. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 522a(i) (3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20530.

Full Name of Requester [1] ___ **Donville James** ___

Current Address ___ **P.O. Box 5000, 2-B, Greenville, Illinois 62246**

Date of Birth ___ **11-24-1970.**

Place of Birth ___ **Kingston, Jamaica**

Social Security Number [2] ___ **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**

I declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [3] ___ *Donville James*    Date ___ **8 | 17 | 05**

## Optional: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. § 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to: ___

*Donville James*

(Print or Type Name)

[1] Name of individual who is the subject of the record sought.
[2] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[3] Signature of individual who is the subject of the record sought.

FORM APPROVED OMB NO. 1103-0016
EXPIRES 1/31/98

FORM DOJ-361
FEB. 95

# EXHIBIT 2



**DEPARTMENT OF HOMELAND SECURITY**
UNITED STATES SECRET SERVICE
WASHINGTON, D.C. 20223

Freedom of Information and Privacy Acts Branch
245 Murray Drive
Building 410
Washington, D.C. 20223

OCT  5 200

Donville James
#14388-424
Federal Correctional Institution
P.O. Box 5000, 2-B
Greenville, IL  62246

File Number:  20050573

Dear Requester:

This letter is intended to acknowledge the receipt of your recent Freedom of Information/Privacy Acts request received by the United States Secret Service on September 15, 2005, for information pertaining to yourself.

The acknowledgement of the Freedom of Information and/or Privacy Acts request for access to records is considered an agreement by you to pay all applicable fees charged up to $25.00 pursuant to Department of Homeland Security Disclosure Regulations.  You may specify a willingness to pay a greater or lesser amount for your information.

A search for files responsive to your request is being conducted.  When the results of the search are known, you will be notified.

Please use the file number indicated above in all future correspondence with this office.

We solicit your cooperation and assure you that the search will be conducted as expeditiously as possible.

Sincerely,

Kathy J. Lyerly
SAIC
Freedom of Information &
Privacy Acts Officer

# EXHIBIT 3

SEIZURE FORM

TORY LIST

201-02-004
201-900-000173
SA D. DICK
J-201-735-131941-S

Oxford®

NO. 152 BLU

**Subject: RE: [Fwd: Seizure: 201-02-004]**
**Date:** Thu, 15 May 2003 14:00:56 -0500
**From:** '                    _                    _    h@usss.treas.gov>
**To:**                              @usss.treas.gov>

Kevin,

FYI sentencing has been moved back to sometime in September 2003.


-----Original Message-----
From:              [mailto:         usss.treas.gov]
Sent: Friday, March 28, 2003 3:14 PM
To:
Subject: [Fwd: Seizure: 201-02-004]


Brandon,

This is an E-Mail for your records to serve as a reminder for you.

SA
A/F


- SA                    re-assigned to this case
  on 8/03.

- Sentencing set for 09/08/03.

- 8/3/03, Per SA        + AUSA Valerie Hayes, sentencing has
  been continued to 11/18/03, 10:30 A.M.

- ~~10/16/03  Dispo Orders Rec'd and verified with EG+G~~

- Case agent        resigned, SA        taking over case.
  10/20/03.

10/23/03 -        advised file ready to close. ~~sent to~~

11/18/03 - sentencing

2/06/04 - Still awaiting sentencing date to be set

## CLOSING SEIZURE FILE CHECKLIST

SEIZURE NO. 201-02-004 PREPARED BY: CRS          DATE A-5-06

### INVENTORY SECTION

✓ SSF 1544 - CERTIFIED INVENTORY OF EVIDENCE
___ SSF 1626 - INVENTORY OF SEIZED CONVEYANCE
___ SSF 3051- PERSONAL PROPERTY

### SEIZURE FORM

___ FINAL SEIZURE REPORT FROM AFB SHOWING A CLOSED DATE

### MEMOS SECTION

✓ OFFICIAL SEIZURE MESSAGES FROM AFB & FIELD
✓ MEMORANDUMS (NOT RELATING TO ACTUAL SEIZURE)
___ CALL RECORDS
___ EMAILS
___ NOTIFICATION OF SEIZURE LETTER TO AUSA

### DISPOSITION SECTION

___ SSF 3385/FED WIRE FORMS
___ DEPOSIT TICKET FOR CUSTOMS SUSPENSE ACCT & COPY OF CHECK
___ PROCLAMATION / DECLARATION OF FORFEITURE
___ CHIEF COUNSEL FORFEITURE RECOMMENDATION
___ PRELIMINARY ORDER OF FORFEITURE
___ FINAL ORDER OF FORFEITURE
___ DEFAULT JUDGEMENT OF FORFEITURE
___ JUDGEMENT IN A CRIMINAL CASE
___ OFFICIAL USE REQUEST
___ OFFICIAL USE APPROVAL / DISAPPROVAL DOCUMENTATION
___ TDF 92-22.46 / DAG 71 – REQUEST FOR TRANSFER OF PROPERTY
       AGENCY_____ / _____ / _____
                    _____ / _____ / _____
___ TDF 90-22.51 / DAG 72 - EQUITABLE SHARING DECISION FORM
       AGENCY _____ / _____ / _____
___ FEDERAL EQUITABLE SHARING AGREEMENTS
___ TDF 90-22 48 - PROCESS RECEIPT AND RETURN FROM TREASURY
___ RELEASE & HOLD HARMLESS AGREEMENTS
___ SUBSTITUTE CUSTODIAN AGREEMENT
___ ADVERTISING RECAP SHEETS
___ U.S. CUSTOMS FORM 6051

## DISPOSITION (CONTINUED)

____ EG&G SALE REPORTS
____ DISPOSITION REQUESTS-SELL/RETURN/TRANSFER TO EG&G/
      TRANSFER FOR EQUITABLE SHARING
____ INVOICES PERTAINING TO ALL EXPENSES / ADVERTISING COSTS
____ DISPOSITION INSTRUCTIONS FOR CURRENCY HELD IN CUSTOMS
____ EG&G PERIODIC MAINTENANCE PLAN APPROVAL
____ QUICK RELEASE FORMS

## PC STATEMENTS / SUPPORTING DOCUMENTATION

____ ORIGINAL PC (FIELD OFFICE SHOULD HAVE A COPY IN FILE)
____ FINAL PC STATEMENT W/ CHIEF COUNSEL COVER SHEET
____ 60 DAY WAIVER
____ SEARCH / SEIZURE WARRANT AND RETURN
____ APPLICATION AND /OR AFFIDAVIT IN SUPPORT OF SEARCH AND/OR
      SEIZURE WARRANTS AND RETURNS
__✓__ CONSENT SEARCH FORMS
____ M/R'S RELATING TO SEIZURE
____ PLEA AGREEMENTS
____ LOCAL POLICE REPORT
____ WARRANT OF ARREST IN REM
____ VERIFIED COMPLAINT FOR FORFEITURE (CIVIL JUDICIAL)
__✓__ INDICTMENT / INFORMATION (CRIMINAL)
____ LIS PENDENS
____ ADOPTION AUTHORIZATION PAPERWORK

## CLAIMS / PETITIONS

____ CLAIMS
____ LETTER TO CLAIMAINT SHOWING RECEIPT
____ LETTER TO AUSA ADVISING OF CLAIM

____ PETITIONS
____ LETTER TO PETITIONER SHOWING RECEIPT
____ O/M TO FIELD REQUESTING PETITION INVESTIGATION
____ PETITION INVESTIGATION
____ AFB PETITION RECOMMENDATION
____ CHIEF COUNSEL PETITION RECOMMENDATION
____ PETITION DECISION LETTER
____ PETITION FOR RECONSIDERATION
____ PETITION FOR RECONSIDERATION RECEIPT LETTER
____ PETITION FOR RECONSIDERATION DECISION LETTER

____ 41 E MOTIONS

## NOTICE LETTERS

____ **FORFEITURE REVIEW FORM FOR PRELIMINARY NOTICE REPORT**
____ **NOTICE LETTERS**

## ADVERTISING ____

____ **AFFIDAVITS OF PUBLICATION FOR 3 WEEKS (ADMINISTRAT IVE & C/J)**
____ **COPIES OF ADVERTISEMENT FOR 3 WEEKS (ADMINISTRATIVE & C/J)**

## APPRAISAL / NET EQUITY

____ **NET EQUITY WORKSHEETS**
____ **APPRAISALS AND/OR PHOTOGRAPHS**
____ **PHOTOGRAPHS OF PROPERTY WHEN VALUE IS AFFECTED BY NEEDED**
         **REPAIRS**
____ **LEIN HOLDER INFORMATION**

## OWNERSHIP DOCUMENTS

____ **VEHICLE TITLES**
____ **BILL OF SALE**
____ **PURCHASE RECEIPTS**
____ **COPIES OF REAL ESTATE TITLES (JUDICIAL CASES)**
____ **DEEDS**

## OTHER DOCUMENTS IN FILE

Statement fm. Donville, James dated 3/25/02
Criminal Complaint for James Donville
_____
_____
_____
_____
_____

## DOCUMENTS NEEDED BY DATA ANALYST OR FIELD TO CLOSE FILE

_____
_____
_____
_____
_____
_____
_____

**Denise Mitchel**

**From:** CID [cid@officialmail.usss.treas.gov]
**Sent:** Monday, March 06, 2006 8:05 AM
**To:** CHI
**Cc:** afs; CID
**Subject:** 900.000 Closure of Seizure File/CHI

//PRIORITY//

FROM:    SAIC – Criminal Investigative Division
             Asset Forfeiture Section

TO:       SAIC – Chicago Field Office

SUBJECT:  Closing of Seizure File        File: 900.000

Please be advised that Seizure Number #201-02-004 is scheduled to be closed.  In this regard, your office is requested to submit to this Section a closing checklist within 15 days of this message.

This Section, in turn, will respond within 15 days with a closing checklist and any additional documents, if necessary.

It is imperative that the Asset Forfeiture Section maintain all originals regarding the seizure, when appropriate.  If your seizure file contains any original documents, please make the necessary copies for your file and forward the originals to this Section.

If you have any questions regarding this procedure, please contact Forfeiture Manager        , at 202/406-6075.

Criminal Investigative Division/AFS              Johnson

## Seizure File Index

**INVENTORY LIST**
SSF 1544, SSF 1626,  SSF 3051
Photographs

**SEIZURE FORM**

**MEMOS TO FILE**
Seizure Teletype
M/R'S (General)

**DISPOSITION INFORMATION**
SSF 3385 / Fed Wire Forms
Proclamation / Declaration of Forfeiture
Official Use Request / Documentation
TDF 92-22.46 / DAG 71's
DAG 72's
Release & Hold Harmless Agreements
Invoices Pertaining to All Expenses / Advertising Costs
Customs Form 6051
EG&G Sale Reports
Disposition Requests
Quick Release Forms

**PC STATEMENT / SUPPORTING DOCUMENTS**
PC Statement
60 - Day Waiver
9TH Circuit Checklist
Search Warrants
Seizure Warrants
Affidavit for Search / Seizure Warrants
M/R's (Relating to Seizure)
Plea Agreements
Police Reports
Indictment / Information (Criminal Case)
Verified Complaint (Civil Judicial Case)

**CLAIMS / PETITIONS**
Claims
In Forma Pauperis Requests
In Forma Pauperis Applications
In Forma Pauperis Investigations
Petitions
Petition Response Letters to Petitioner / Field Office
Petition Investigations
Petition Decision Letters
Petition Reconsiderations

**NOTICE LETTERS**
Preliminary Notice Reports
Notice Letters

**ADVERTISING**
Newspaper Affidavits / Ads

**APPRAISAL / NET EQUITY**
Net Equity Worksheets
Appraisals
Photographs of property when value is affected by needed repairs
Lienholder Information

**OWNERSHIP DOCUMENTS**
Vehicle Titles
Bill of Sale
Purchase Receipts
Copies of Real Estate Titles (Judicial Cases)

**Subject: SEIZURE TWX - 201-02-004**
**Date:** 18 Jun 2002 19:11:14 GMT
**From:** CHICAGO <CHI@OFFICIALMAIL.USSS.TREAS.GOV>
**Organization:** United States Secret Service
**Newsgroups:** investigations.chi.offmsg

```
From: CHICAGO <CHI@OFFICIALMAIL.USSS.TREAS.GOV>
To: FCD1@OFFICIALMAIL.USSS.TREAS.GOV,
    CHI@OFFICIALMAIL.USSS.TREAS.GOV
Subject: SEIZURE TWX - 201-02-004
```

b \\PRIORITY\\

```
FROM:      SAIC-CHICAGO              SEIZURE NUMBER: 201-02-004
                                     FILE NUMBER:    J-201-735-131941-S

TO:        FINANCIAL CRIMES DIVISION
ATTN:      ASSET FORFEITURE BRANCH

SUBJ:      NOTIFICATION OF CRIMINAL SEIZURE
FILE NO:   903.000
```

1. DATE FEDERAL SEARCH WARRANTS ISSUED: 05/31/02
   WARRANT NUMBER: 02 CR 278
   DATE OF SEIZURE: 06/07/02

   CRIMINAL INDICTMENT FILED: 04/11/02

2. SEIZURE NUMBER: 201-02-004
   USSS CASE: J-201-735-131941-S
   CASE TYPE: 735.041
   SECONDARY CASE TYPE: 735.021, 735.031, 848.940

3. AUSA CONTACTED: VALERIE HAYS, NORTHERN DISTRICT OF ILLINOIS

4. PROPERTY SEIZED: MISCELLANEOUS COMPUTER AND OTHER EQUIPMENT

5. APPROXIMATE VALUE OF PROPERTY: $1030.00

6. NAME OF STORAGE LOCATION: CHICAGO FIELD OFFICE

7. AMOUNT OF NON-EVIDENTIARY CASH
   OR MONETARY INSTRUMENTS SEIZED: NONE

8. NUMBER OF LIENS: N/A

9. SEIZED FROM: DONVILLE JAMES

10. ADDRESS OF CLAIMANT:  7535 S. SAGINAW, APT. 19
                          CHICAGO, IL  60649

11. SHARING REQUEST: NO

12. ADOPTION SEIZURE: NO

13. TEOFF TASK FORCE: YES

14. ECSAP INVOLVEMENT: YES

15. CASE AGENT: SA

16. ASSET FORFEITURE SPECIALIST:

CHICAGO

**Subject: 903.000 Issuance of Seizure Number/CHI**
**Date:** 17 Jun 2002 19:30:05 GMT
**From:** FCD1 <FCD1@OFFICIALMAIL.USSS.TREAS.GOV>
**Organization:** United States Secret Service
**Newsgroups:** investigations.chi.offmsg

```
From: FCD1 <FCD1@OFFICIALMAIL.USSS.TREAS.GOV>
To: CHI <CHI@OFFICIALMAIL.USSS.TREAS.GOV>
Cc: FCD1@OFFICIALMAIL.USSS.TREAS.GOV
Subject: 903.000 Issuance of Seizure Number/CHI
```

//PRIORITY//

FROM:      SAIC - Financial Crimes Division
                   Asset Forfeiture Branch

TO:        SAIC - Chicago Field Office

SUBJECT:  Issuance of Criminal Seizure Number          File:  903.000

On June 17, 2002 FCD/AFB contacted your office regarding he issuance fo a
seizure number.

Seizure Number #201-02-004 relating to Criminal Case #J-201-735-131941-S was
issued.  The following documents are required within the time period specified
from the date the Criminal Indictment was issued:

```
        Official Seizure Message    - Two Days     ✓ SENT 6|18

        Copy of SSF 1544            - 10 Days      ✓ SENT & FAXED 6-17

        Seizure Form                - 10 Days

        Criminal Indictment         - 10 Days      ✓ Sent & FAXED 6-17

        Copy of SSF 3049's          - 10 Days
```

If you have any questions regarding the above mentioned requirements, please
contact Forfeiture Manager

Financial Crimes Division/Asset Forfeiture Branch                    ./Savage

7c

**Subject: J-201-735-131941-S**
**Date:** Thu, 13 Jun 2002 18:11:37 -0400
**From:** @usss.treas.gov>
**Organization:** United States Secret Service
**To:** )usss.treas.gov
**CC:** @usss.treas.gov

Kevin: I've placed the above listed Criminal seizure on your desk. Please get together with CRS            so she can walk you through the process.

1. Call AFB (Asset Forfeiture Branch) and let them know the US Attorney's Office has forwarded an indictment which includes forfeiture allegations.

2. AFB will have you fax and fedex copies of the 1544s, consents to search, statements, waiver of rights and the criminal indictment.

3. SA            examined the items found on SSF 1544 201-2002 CE 000457 and has stated items 1-4 are worth forfeiting and using for official use.            will draft the Official Use memos.

4.            will need your assistance with all the required paperwork. Once the criminal seizure number is issued, open up a work file and add this seizure to the Asset Forfeiture Report Document on the shared (I) drive.

# United States Secret Service

## Seizure Report

*Agency Seizure Number = 201-2002-004*

U.S. SECRET SERVICE

02 JUL 22 PM 4:19

CHICAGO FIELD OFFICE

| | | | |
|---|---|---|---|
| **Case Nbr** | J-201-735-131941-S | | |
| **Case Type** | 735.000 - Ink Jet Note Investigations | | |
| **Seizure Nbr** | 201-2002-004 | **Seized Indicator** | Seized |
| | | **Issued On** | 6/17/2002 |
| | | **Seizure Date** | 3/25/2002 |
| | | **Indictment Date** | 4/11/2002 |
| **Seizing Agent** | | **Judicial Complaint Date** | |
| **Seized From** | | | |
| Donville James | | | |
| 7535 S. Saginaw | | **Seizure Status** | Open |
| Apt. 19 | | **Seizure Entered Date** | 7/10/2002 |
| Chicago IL, 60649 | | **Seizure Closed Date** | |
| | | **Processing District** | Northern District of Illinois |
| | | **Seizure Method** | Indictment |
| | | **Seizure District** | Northern District of Illinois |
| | | **Do Not Advertise?** | |
| | | **Do Not Notify?** | |
| **Violation Statute(s)** | | **Seizure Authorities Statute(s)** | |
| 18 USC 472 | | 18 USC 492 | |

| Asset Number | Forfeiture Type | Seized Indicator | Seizure Date | Lis Pend. | Quantity / Value Seizure District | Status |
|---|---|---|---|---|---|---|
| 201-2002-004-0001 | Criminal | Seized | 3/25/2002 | | 1    Each  $300.00 | Open |
| Computer Equipment - Xerox Workcenter M940 | | | | | Northern District of Illinois | |
| 201-2002-004-0002 | Criminal | Seized | 3/25/2002 | | 1    Each  $200.00 | Open |
| Computer Equipment - Compaq C31000 | | | | | Northern District of Illinois | |
| 201-2002-004-0003 | Criminal | Seized | 3/25/2002 | | 1    Each  $500.00 | Open |
| Computer Equipment - Dell CPU Tower Dimensions XPS D300 | | | | | Northern District of Illinois | |
| 201-2002-004-0004 | Criminal | Seized | 3/25/2002 | | 1    Each  $30.00 | Open |
| General Merchandise - Quartet 12 Inch Paper Cutter | | | | | Northern District of Illinois | – |
| 201-2002-004-0005 | Criminal | Seized | 3/25/2002 | | 1    Each  $0.00 | Open |
| Counterfeit Documents - Approximately $92,000.00 in Counterfeit U.S. Currency | | | | | Northern District of Illinois | |

*Seizure Number = 201-2002-004*

**Status Inquiry Information**

| | | |
|---|---|---|
| **Asset Number** | **Seizure Number** | **Case Number** |
| 201-2002-004-0001 | 201-2002-004 | J-201-735-131941-S |

**Asset Description**
Xerox Workcenter M940

| | | | |
|---|---|---|---|
| **Asset Category** | Computer Equipment | **Seized Indicator** | Seized |
| **Sub Category** | Copier | **Seizure Date** | 3/25/2002 |
| **Seizure Appraisal Value** | $ 300.00 | **Seizure District** | Northern District of Illinois |
| | | **Seizure Address** | 7535 S. Saginaw |
| **Adoption Date** | | | Apt. 19 |
| **Contractor Referral Date** | | | Chicago, IL 60649 |
| **Processing District** | Northern District of Illinois | **Judgment Payment?** | |
| **Held For Evidence?** | | **Lien Exists?** | |
| **Advertisement Exist?** | | **Expense Exists?** | |
| **Notifications Exist?** | | **Lis Pendens Exist?** | |
| **Claims Exist?** | | **Sharing Exists?** | |
| **Forfeiture Date** | | **Disposition** | |

| Forfeiture Process Type(s) | Date(s) |
|---|---|
| Criminal | 4/11/2002 |

**Disposition Issued Date**
**Final Disposition Date**

**Requested for Official Use Date:**

Asset Status Information

*Seizure Number =   201-2002-004*

**Status Inquiry Information**

| **Asset Number** | **Seizure Number** | **Case Number** |
|---|---|---|
| 201-2002-004-0002 | 201-2002-004 | J-201-735-131941-S |

**Asset Description**
Compaq C31000

| | | | |
|---|---|---|---|
| **Asset Category** | Computer Equipment | **Seized Indicator** | Seized |
| **Sub Category** | Copier | **Seizure Date** | 3/25/2002 |
| **Seizure Appraisal Value** | $ 200.00 | **Seizure District** | Northern District of Illinois |
| | | **Seizure Address** | 7535 S. Saginaw |
| **Adoption Date** | | | Apt. 19 |
| **Contractor Referral Date** | | | Chicago, IL  60649 |
| **Processing District** | Northern District of Illinois | **Judgment Payment?** | |
| **Held For Evidence?** | | **Lien Exists?** | |
| **Advertisement Exist?** | | **Expense Exists?** | |
| **Notifications Exist?** | | **Lis Pendens Exist?** | |
| **Claims Exist?** | | **Sharing Exists?** | |
| **Forfeiture Date** | | **Disposition** | |

| **Forfeiture Process Type(s)** | **Date(s)** |
|---|---|
| Criminal | 4/11/2002 |

**Disposition Issued Date**
**Final Disposition Date**

**Requested for Official Use Date:**

*Seizure Number = 201-2002-004*

**Status Inquiry Information**

| **Asset Number** | **Seizure Number** | **Case Number** |
|---|---|---|
| 201-2002-004-0003 | 201-2002-004 | J-201-735-131941-S |

**Asset Description**
Dell CPU Tower Dimensions XPS D300

| | | | |
|---|---|---|---|
| **Asset Category** | Computer Equipment | **Seized Indicator** | Seized |
| **Sub Category** | Computer Equipment | **Seizure Date** | 3/25/2002 |
| **Seizure Appraisal Value** | $ 500.00 | **Seizure District** | Northern District of Illinois |
| | | **Seizure Address** | 7535 S. Saginaw |
| **Adoption Date** | | | Apt. 19 |
| **Contractor Referral Date** | | | Chicago, IL  60649 |
| **Processing District** | Northern District of Illinois | **Judgment Payment?** | |
| | | | |
| **Held For Evidence?** | | **Lien Exists?** | |
| **Advertisement Exist?** | | **Expense Exists?** | |
| | | | |
| **Notifications Exist?** | | **Lis Pendens Exist?** | |
| **Claims Exist?** | | **Sharing Exists?** | |
| **Forfeiture Date** | | **Disposition** | |

| **Forfeiture Process Type(s)** | **Date(s)** |
|---|---|
| Criminal | 4/11/2002 |

**Disposition Issued Date**
**Final Disposition Date**

**Requested for Official Use Date:**

*Seizure Number = 201-2002-004*

**Status Inquiry Information**

**Asset Number**          **Seizure Number**       **Case Number**
201-2002-004-0004         201-2002-004             J-201-735-131941-S

      **Asset Description**
      Quartet 12 Inch Paper Cutter

| | | | |
|---|---|---|---|
| **Asset Category** | General Merchandise | **Seized Indicator** | Seized |
| **Sub Category** | General Merchandise | **Seizure Date** | 3/25/2002 |
| **Seizure Appraisal Value** | $ 30.00 | **Seizure District** | Northern District of Illinois |
| | | **Seizure Address** | 7535 S. Saginaw |
| **Adoption Date** | | | Apt. 19 |
| **Contractor Referral Date** | | | Chicago, IL  60649 |
| **Processing District** | Northern District of Illinois | **Judgment Payment?** | |

**Held For Evidence?**                          **Lien Exists?**
**Advertisement Exist?**                         **Expense Exists?**

**Notifications Exist?**                         **Lis Pendens Exist?**
**Claims Exist?**                                **Sharing Exists?**
**Forfeiture Date**                              **Disposition**

                                         **Disposition Issued Date**
                                         **Final Disposition Date**

| Forfeiture Process Type(s) | Date(s) |
|---|---|
| Criminal | 4/11/2002 |

                                         **Requested for Official Use Date:**

*Seizure Number = 201-2002-004*

## Status Inquiry Information

| Asset Number | Seizure Number | Case Number |
|---|---|---|
| 201-2002-004-0005 | 201-2002-004 | J-201-735-131941-S |

**Asset Description**
Approximately $92,000.00 in Counterfeit U.S. Currency

| | | | |
|---|---|---|---|
| **Asset Category** | Counterfeit Documents | **Seized Indicator** | Seized |
| **Sub Category** | Countefeit U.S. Currency | **Seizure Date** | 3/25/2002 |
| **Seizure Appraisal Value** | $ 0.00 | **Seizure District** | Northern District of Illinois |
| | | **Seizure Address** | 7535 S. Saginaw |
| **Adoption Date** | | | Apt. 19 |
| **Contractor Referral Date** | | | Chicago, IL 60649 |
| **Processing District** | Northern District of Illinois | **Judgment Payment?** | |

**Held For Evidence?**
**Advertisement Exist?**

**Lien Exists?**
**Expense Exists?**

**Notifications Exist?**
**Claims Exist?**
**Forfeiture Date**

**Lis Pendens Exist?**
**Sharing Exists?**
**Disposition**

| Forfeiture Process Type(s) | Date(s) |
|---|---|
| Criminal | 4/11/2002 |

**Disposition Issued Date**
**Final Disposition Date**

**Requested for Official Use Date:**

# United States Secret Service

## Asset Report

7/12/2002

*Agency Seizure Number =  201-2002-004*

| Asset Number | Asset Description | Seized Value | Qty | UOM | Seizure Date | Forfeiture Date | Disp. Issued Date | Final Disp. Date | Days Held |
|---|---|---|---|---|---|---|---|---|---|
| 201-2002-004-0001 | Xerox Workcenter M940 | $ 300.00 | 1 | Each | 3/25/2002 | | | | 109 |
| 201-2002-004-0002 | Compaq C31000 | $ 200.00 | 1 | Each | 3/25/2002 | | | | 109 |
| 201-2002-004-0003 | Dell CPU Tower Dimensions XPS D300 | $ 500.00 | 1 | Each | 3/25/2002 | | | | 109 |
| 201-2002-004-0004 | Quartel 12 Inch Paper Cutter | $ 30.00 | 1 | Each | 3/25/2002 | | | | 109 |
| 201-2002-004-0005 | Approximately $92,000.00 in Counterfeit U.S. Currency | $ 0.00 | 1 | Each | 3/25/2002 | | | | 109 |

**Grand Total Seized**    **$ 1,030.00**      **Total Asset Count**   5

**FedEx Express** · *USA Airbill*

FedEx Tracking Number: **8335 6142 3516**

**Sender's Copy**

Date: **6/17/02**

Sender's FedEx Account Number: **0605-1912-7**

Sender's Name: **SA**

Company: **US SECRET SERVICE**

Address: **525 W VAN BUREN ST**

**CHICAGO** State **IL** ZIP **60607-3814**

Your Internal Billing Reference: **201-02-004**

Recipient Name: **/AFB**

Company: **U.S.S.S.**

Address: **245 Murray Dr. SW  Bldg 410**

**Washington, DC.** ZIP **20373-5824**

Try online shipping at fedex.com

By using this Airbill you agree to the service conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability.

**Questions? Visit our Web site at fedex.com**
or call 1.800.Go.FedEx® 800.463.3339.

0216937028

**4a Express Package Service**
- [ ] FedEx Priority Overnight
- [x] FedEx Standard Overnight
- [ ] FedEx First Overnight
- [ ] FedEx 2Day
- [ ] FedEx Express Saver

**4b Express Freight Service**
- [ ] FedEx 1Day Freight
- [ ] FedEx 2Day Freight
- [ ] FedEx 3Day Freight

**5 Packaging**
- [x] FedEx Envelope*
- [ ] FedEx Pak*
- [ ] Other

**6 Special Handling**
- [ ] SATURDAY Delivery
- [ ] HOLD Weekday
- [ ] HOLD Saturday

Does this shipment contain dangerous goods?
- [x] No
- [ ] Yes
- [ ] Yes Shipper's Declaration
- [ ] Dry Ice
- [ ] Cargo Aircraft Only

**7 Payment** Bill to:
- [x] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

Total Packages | Total Weight | Total Declared Value $ .00

**8 Release Signature** Sign to authorize delivery without obtaining signature.

By signing you authorize us to deliver this shipment without obtaining a signature and agree to indemnify and hold us harmless from any resulting claims.

**447**

1ᶜ

**FedEx** *USA Airbill* Express

FedEx Tracking Number: 8335 6130 4860

Sender's Copy

Date: 6/24/02

Sender's FedEx Account Number: 0605-1912-9

Company: US. SECRET SERVICE

Address: 525 W VAN BUREN ST

CHICAGO   State IL   ZIP 60607-3814

Internal Billing Reference: #201 - 012 - 004

(AFB)

Company: US Secret Service

Address: 245 Murray Dr. SW Bld 410

Washington DC   State   ZIP 20373-5824

Try online shipping at fedex.com

By using this Airbill you agree to the service conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability.

Questions? Visit our Web site at fedex.com
or call 1.800.Go.FedEx® 800.463.3339.

0216937028

**4a Express Package Service**   Packages up to 150 lbs.

- [ ] FedEx Priority Overnight
- [x] FedEx Standard Overnight
- [ ] FedEx First Overnight

- [ ] FedEx 2Day
- [ ] FedEx Express Saver

**4b Express Freight Service**   Packages over 150 lbs.

- [ ] FedEx 1Day Freight*
- [ ] FedEx 2Day Freight
- [ ] FedEx 3Day Freight

**5 Packaging**

- [x] FedEx Envelope*
- [ ] FedEx Pak*
- [ ] Other

**6 Special Handling**

- [ ] SATURDAY Delivery
- [ ] HOLD Weekday
- [ ] HOLD Saturday

Does this shipment contain dangerous goods?

- [x] No
- [ ] Yes (Shipper's Declaration not required)
- [ ] Yes (As per attached Shipper's Declaration)
- [ ] Dry Ice
- [ ] Cargo Aircraft Only

**7 Payment** Bill to:

- [x] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

Total Packages   Total Weight   Total Declared Value
$           .00

**8 Release Signature** Sign to authorize delivery without obtaining signature.

447

SRS-Rev Date 10/01 • Part #154(05) • ©1994-2001 FedEx • PRINTED IN U.S.A.

AO 91 (REV. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA **RECEIVED** MAGISTRATE SIDNEY I. SCHENKIER

v.

**CRIMINAL COMPLAINT**

MAR 2 5 2002

JAMES DONVILLE

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CASE NUMBER: **02CR0278**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about March 25, 2002 in Cook County, in the

Northern District of Illinois defendant did

knowingly attempt to possess with intent to distribute approximately 15 kilograms of cocaine, a Schedule II narcotic drug controlled substance,

in violation of Title 21 United States Code, Section 846.

I further state that I am a Special Agent of the United States Federal Bureau of Investigation and that this complaint is based on the following facts:

**See attached affidavit**

Continued on the attached sheet and made a part hereof:   **X** Yes  ____ No

_____

Signature of Complainant

Sworn to before me and subscribed in my presence,

March 25, 2002

Date

at   Chicago, Illinois

City and State

_Sidney I. Schenkier_

SIDNEY I. SCHENKIER, MAGISTRATE JUDGE

Name & Title of Judicial Officer

_____

Signature of Judicial Officer

STATE OF ILLINOIS          )
                           )     SS
COUNTY OF COOK             )

## AFFIDAVIT

I, Frank DePodesta, being duly sworn under oath, state as follows:

1.    I am a Special Agent (S/A) of the United States Federal Bureau of Investigation. I have been employed as a FBI agent since July 1995. As part of my regular duties, I have investigated many drug trafficking organizations, arrested narcotics violators, managed the activities of confidential informants(CI), and seized narcotics and the proceeds from illegal narcotic sales. In connection with this assignment, I am charged with, among other things, investigating violations of the Controlled Substances Act, Title 21, United States Code.

2.    I have participated in the investigation of the offense described below and have briefed other law enforcement officers on the progress thereof. As a result, I am familiar with many aspects of the investigation, although I did not personally participate in every aspect. I have also relied upon information related to me by other law enforcement officers, including officers from the United States Secret Service. On the basis of this information, I allege the facts contained herein to show there is probable cause to believe JAMES DONVILLE

1

did knowingly attempt to possess with intent to distribute
approximately 15 kilograms of cocaine, a Schedule II narcotic
drug controlled substance, in violation of 21 U.S.C. § 846.

3.   These matters are set forth for the purpose of
establishing probable cause with respect to the charge described
in the attached criminal complaint.  Accordingly, this
information is in summary form and does not represent all of the
information of which I am aware relating to this investigation.

4.   In March 2002, a cooperating individual (CI) provided
the FBI with information about an individual known to the CI as
"James."  The CI explained that James asked if the CI would be
willing to arrange a narcotics transaction in which James would
pay for powder cocaine with counterfeit United States currency.

5.   The CI agreed to work with the FBI and Secret Service
to do an undercover operation.  As part of this operation, the
CI told James he knew a cocaine supplier who could provide them
with powder cocaine.

6.   Through several phone conversations in March 2002,
James and the CI discussed different quantities of powder
cocaine to purchase using counterfeit currency.

2

7.    On March 21, 2002, the CI met James at an Amoco gas station located on West North Avenue and North Elston Avenue in Chicago.  James was driving a 2002 red Monte Carlo Enterprise rental car.  In this conversation, James and the CI agreed to purchase 10 kilograms of cocaine for $200,000 in counterfeit currency from the CI's source.  The CI was equipped with a concealed recording device and a transmitting device allowing the surveillance agents to monitor their conversation.

8.    By checking with Enterprise Rent-A-Car, the Secret Service determined defendant JAMES DONVILLE was listed as an additional driver on the car.

9.    On March 22, 2002, Defendant JAMES DONVILLE asked the CI if he could obtain 20 kilograms of powder cocaine.  The CI said he would call his supplier and see if 20 kilograms were available.

10.    On March 24, 2002, the CI placed a recorded telephone call to Defendant JAMES DONVILLE.  They agreed on purchasing 15 kilograms of powder cocaine for $300,000.  Defendant JAMES DONVILLE advised that he would have $200,000 in counterfeit money.

3

11. On March 25, 2002, the CI and Jones had several telephone conversations in which they agreed to meet at the McDonalds restaurant in the Brick Yard Mall, at the corner of Diversey and Narragansett, in order to further discuss and conduct the transaction. At the meeting, the CI was equipped with a concealed recording device and a transmitting device allowing the surveillance agents to monitor their conversation.

12. At approximately 11:00 am, the CI arrived at McDonalds. Defendant JAMES DONVILLE arrived shortly after the CI arrived. Defendant JAMES DONVILLE asked the CI to get into his car and told the CI he was going to take him to show him the counterfeit currency.

13. Defendant JAMES DONVILLE drove the CI to a vehicle parked on North Narragansett near the McDonalds restaurant. The CI and Defendant DONVILLE got out of James' vehicle and looked in the trunk of a Nissan Ultima driven by and registered to Tameka Addison.

14. Defendant JAMES DONVILLE showed the CI a bag which contained a large amount of what appeared to be United States currency. Donville said he paid $40,000 in real currency for

4

the counterfeit currency and told the CI it was $300,000 in counterfeit currency.

15.   Defendant JAMES DONVILLE and the CI went back to the CI's vehicle at McDonalds.  The CI told Donville that he spoke with his supplier and the supplier had left the kilograms of cocaine scattered in multiple cars at unspecified nearby locations.  He told Donville he was going to get the first five kilograms of cocaine and that he would return shortly.

16.   When the CI was going to get the five kilograms, defendant DONVILLE called him on his cellular phone and said the CI could trust him with the five kilograms of cocaine.

17.   The CI retrieved a bag containing five fake kilograms from a government vehicle and returned to McDonalds.

18.   Defendant DONVILLE pulled behind the CI's vehicle, so the CI could put the cocaine in the trunk.  DONVILLE then pulled away from the CI's vehicle prior to the CI putting the cocaine in his trunk.  DONVILLE then called the CI on the telephone and said there was a white van in the parking lot that looked suspicious.  DONVILLE asked the CI to come to an adjacent parking lot and give him the cocaine.

19. The CI drove to the adjacent parking lot, pulled up near DONVILLE'S car, exited his vehicle with the five kilograms of fake cocaine, and brought the cocaine to DONVILLE. The CI took one kilogram of cocaine out of the bag and handed it to him. DONVILLE said it looked OK and gave it back to the CI to put in the bag. The CI then put the five kilograms on the passenger seat of DONVILLE'S car.

20. DONVILLE retrieved another kilogram of cocaine from the bag, examined it, and placed it back in the bag. DONVILLE then told the CI that when the CI gets another five kilograms of cocaine he would give him the fake currency.

21. DONVILLE also stated, "I don't have to use my gun then, right?" The CI responded, "No" and walked away.

22. After the CI left, FBI and Secret Service agents pulled up behind the defendant's vehicle and he attempted to drive away before being stopped by another government vehicle.

23. At this point, DONVILLE was arrested. His car was searched. In the front passenger's seat, agents discovered the bag containing the five fake kilograms of cocaine. On the

6

driver's side floorboard, agents discovered a loaded Smith and Wesson nine millimeter semi-automatic pistol.

24.    Defendant DONVILLE was advised of his rights by United States Secret Service agents.    He agreed to waive these rights and speak with the agents.    He confessed to his involvement in the crime discussed above.    He stated he planned to buy 15 kilograms of powder cocaine with counterfeit currency, keep some of the drugs himself, give some to the CI, and use the rest of the drugs to pay Gangster Disciples for the counterfeit currency that they provided to him.

25.    Based upon my experience and training, I believe that the aforementioned facts constitute probable cause to charge JAMES DONVILLE with violations of federal law, specifically including violations of Title 21, United States Code, Section 846.

FURTHER AFFIANT SAYETH NOT

_____
Special Agent Frank DePodesta, Applicant
US Federal Bureau of Investigation

Sworn and Subscribed before me this 25th day of March, 2002.

Sidney I. Schenkier

7

United States Magistrate Judge
Chicago, Illinois

8

# WARNING AND CONSENT TO SPEAK

## WARNING OF RIGHTS

You must understand your rights before we ask you any questions.

You have the right to remain silent.

Anything you say can be used against you in court, or other proceedings.

You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning.

If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time. You also have the right to stop the questioning at any time until you talk to a lawyer.

I have read this statement of my rights and it has been read to me, and I understand what my rights are.

Date MARCH 25, 2002

Time 2:07 pm

X _____
Signature

**CONSENT TO SEARCH**

DATE
MARCH 25, 2002
LOCATION
300 S. RIVERSIDE PLAZA
CHICAGO, IL 60606

I, Donnie James _____, have been informed of my constitutional right

not to have a search made of the premises and/or automobile mentioned without a search warrant.

I have also been informed of my right to refuse to consent to such a search. However, I hereby

authorize SA _____ and SA _____,

OF THE UNITED STATES SECRET SERVICE

Titles of Officers or Agents and Names of Agency

to conduct a complete search of the premises and/or automobile at _____

7535 S. SAGINAW, CHICAGO, ILLINOIS APT # 19

These (officers or agents) are authorized by me to take from the premises and/or automobile any

letters, papers, materials or other property which is contraband or evidence in the nature of

THE PRODUCTION OF COUNTERFEIT CURRENCY. I understand that this contraband or

evidence may be used against me in a court of law.

This written permission is being given by me to the above named persons voluntarily and without

threats, duress or promises of any kind. I understand that I may ask for and receive a receipt for

all things taken.

Signature of Witnesses:                          Signature of Consentor

SA                                               X _____

This form is not subject to the requirements of P.L. 96-511 "Paperwork Reduction Act of 1980." 44 USC, Chapter 35.    SSF 1922 (01/82)

UNITED STATES SECRET SERVICE

CITY OF Chicago            )          DATE March 25, 2002

COUNTY OF Cook            ) SS:

STATE OF Illinois            )          TIME 3:00 pm

I, Donnie James            , am  31  years of age.
I know that I am talking to SA                  , and
themselves/himself/herself to me as a Special Agent(s) of the U.S.
Secret Service.  No promises or threats have been made to me.  I
understand and know what I am doing, and I wish to make the fol-
lowing statements freely and voluntarily.

Approximately two weeks ago I met dole
though one of my friend from School
Brian Smith who told me that dole could
get Some counterfitt money that he wanted
to do business with. He dole ask me
if I know any one with heroin. He
wanted to buy heroin with the
counterfitt. I told him I doesn't
know any one with heroin but I
know Someone with Cocain. We
were to make an exchange for
15 keys of Cocain for the

1of4

Counterfit. I took some of the Counterfill and put papers inbetween them to make it look like three hundred thousand dollars. I met Dale about two weeks ago. He took me to his Condo and show me some of the Counterfit and told me he could get any amount I wanted. But they wise $35,000 for each hundred thousand. I then get in touch with Allen and ask him if he can get any heroin and he said he can get Cocaine. We desided to do a Cocaine transaction for three hundred thousand. Dale told me that he would have two problem getting rid of the Cocaine. but what he really wanted is heroin. Dale is a male Black. he is about 5"11', 210 pound. he stays off yates and exchange. he drove limo for Chicago limo. He also said he is a member of the gangster Desiple.

2 of 4

Yesterday I met dale at the corner of gate and exchange. he gave me a bag with the counterbill. He was driving a Robert limo. He said there should be about $100,000 in the bag. He wanted to give me $300,000, But I only took $100,000 that he said was in the bag. And I put the cut papers in between told he gave me to let it look like it was $300,000. Today I Cald allen to make the exchange of the the $300,000 in Counterbill for the fifteen kays of Cocain, He told me to meet him and me Donald to make the excha The Counter fill money was in my girlfriends car (Tuneka addison). I told was to follow me to mcDonald. In the parking lot of the branch yard mall I $3 met up with allen and he put a bag in the car That I was driving It was a red monte Carlo. The bag that allen put in the car had the Cocain in it.

3 of 4

7<sup>c</sup>

After allen drop of the keys in the car he said he would. Thats when the police came and arrest me

This statement is true and correct to the best of my knowledge. I have been given an opportunity by Special Agent _____ to make any additional and/or corrections to my statement.

_____

Signature

SIGNED AND SWORN TO

Before ME THIS 25nt

Day of March 19 2002.

Authority to Administer Oaths:
Title 5, Section 303, U.S. Code

WITNESS:

SA

4 OF 4

| CERTIFIED INVENTORY OF EVIDENCE | | | SERIAL NUMBER | | | | |
|---|---|---|---|---|---|---|---|
| | | | 201 2002 CE 000457 | | | | |

**EVIDENCE HELD AGAINST** ☐ SPECIMEN

JAMES DONVILLE

EVIDENC

SIGNATURE - SPECIAL AGENT    3/25/02 DATE

SIGNATURE - WITNESS    3/25/02 DATE

**CASE NO.** 201-735-0131941-S

**OFFICE** CHICAGO FIELD OFFICE

**DATE OF INVENTORY** 03/25/02    PAGE **1** OF **3** PAGES

**REVIEWING SUPERVISOR**

SIGNATURE    3/25/02 DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at:    ☐FSD  ☐CFT.

SIGNATURE - DIVISION    DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | THE BELOW ITEMS WERE RECOVERED BY DURING A CONSENT TO SEARCH OF THE RESIDENCE OF DONVILLE JAMES AT 7535 SOUTH SAGINAW, CHICAGO, ILLINOIS, APT. 19. MARKED FOR IDENTIFICATION: "MJN 03/25/02" (SA | |
| 1 | 03/25/02 | 1 | XEROX WORKCENTER M940 (COPIER/SCANNER) SERIAL NUMBERS: Item 1 PTO 092780 | $300.00 |
| 2 | 03/25/02 | 1 | COMPAQ C31000 (COPIER) SERIAL NUMBERS: Item 2 5G0ADGZHJB8 | $200.00 |
| 3 | 03/25/02 | 1 | DELL CPU TOWER DIMENSIONS XPS D300, MODEL MMP SERIAL NUMBERS: Item 3 BG6DD | $500.00 |
| 4 | 03/25/02 | 1 | QUARTET 12" PAPER CUTTER, MODEL 9112 Item 4 | $30.00 |
| 5 | 03/25/02 | 1 | LEXMARK BLACK HIGH RESOLUTION STANDARD PRINT CARTRIDGE 12A1970 | $20.00 |
| | | | **TOTAL ⟶** | $1050.00 |

UNITED STATES SECRET SERVICE

SSF 1544 (03/86)

FINAL TM

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

4/15/02

| | | | Certified Inventory of Evidence | |
|---|---|---|---|---|

**Certified Inventory of Evidence**
(Continuation Sheet)

SERIAL NUMBER (FROM SSF 1544)
**201 2002 CE 000457**

PAGE **2** OF **3** PAGES

DATE OF INVENTORY
**03/25/02**

OFFICE
CHICAGO FIELD OFFICE

CASE NO.
**201-735-0131941-S**

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | BROUGHT FORWARD | $1050.00 |
| 6 | 03/25/02 | 1 | LEXMARK COLOR HIGH RESOLUTION STANDARD PRINT CARTRIDGE 12A1980 | $20.00 |
| 7 | 03/25/02 | 2 | XEROX BLACK INK CARTRIDGE Y100 | $40.00 |
| 8 | 03/25/02 | 2 | XEROX CYAN INK CARTRIDGE Y101 | $40.00 |
| 9 | 03/25/02 | 2 | XEROX MAGENTA INK CARTRIDGE Y102 | $40.00 |
| 10 | 03/25/02 | 1 | 1 LB ALLIANCE STERLING RUBBER BANDS | $5.00 |
| | | | TOTAL ⟶ | $1195.00 |

UNITED STATES SECRET SERVICE

SSF 1544A (03/86)

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

FINAL
TM

## CERTIFIED INVENTORY OF EVIDENCE

| SERIAL NUMBER |
| --- |
| 201 2002 CS 000069 |

**EVIDENCE HELD AGAINST** ☐ SPECIMEN

JAMES DONVILLE

**EVIDENCE**

SIGNATURE - SPECIAL AGENT    03/25/02    DATE

SIGNATURE - WITNESS    3/25/02    DATE

| CASE NO. |
| --- |
| 201-735-0131941-S |

OFFICE
CHICAGO FIELD OFFICE

| DATE OF INVENTORY | | |
| --- | --- | --- |
| 03/25/02 | PAGE 1 OF 2 PAGES |

REVIEWING SUPERVISOR

SIGNATURE    5/25/02    DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at:  ☐FSD  ☐CFT.

SIGNATURE - DIVISION    DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
| --- | --- | --- | --- | --- |
| | | | THE BELOW ITEMS WERE RECOVERED BY SA DURING A CONSENT SEARCH OF THE RESIDENCE OF DONVILLE JAMES AT 7535 SOUTH SAGINAW, CHICAGO, ILLINOIS, APT. 19. | |
| | | | MARKED FOR IDENTIFICATION: "MJN 03/25/02" | |
| 1 | 03/25/02 (S) | 8 | P NOTE CFT $ 20.00 FRN P9684 | $160.00 |
| | | | SERIES 1999 SERIAL BB94506595C | |
| 2 | 03/25/02 (S) | 2 | P NOTE CFT $ 20.00 FRN P9684 | $40.00 |
| | | | SERIES 1999 SERIAL BG29290429A | |
| | | | TOTAL ——➤ | $200.00 |

UNITED STATES SECRET SERVICE

SSF 1544 (03/86)

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

FINAL
TM     7B2

## CERTIFIED INVENTORY OF EVIDENCE

| SERIAL NUMBER | |
|---|---|
| | 201 2002 CS 000070 |

**EVIDENCE HELD AGAINST** ☐ SPECIMEN

JAMES DONVILLE

EVID

SIGNATURE - SPECIAL AGENT                    DATE

'502

SIGNATURE - WITNESS                    3/25/02
DATE

| CASE NO. | |
|---|---|
| | 201-735-0131941-S |
| OFFICE | |
| CHICAGO FIELD OFFICE | |
| DATE OF INVENTORY | |
| 03/25/02 | PAGE **1** OF **2** PAGES |
| REVIEWING SUPERVISOR | |

SIGNATURE                    3/25/02
DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at:    ☐FSD    ☐CFT.

SIGNATURE - DIVISION                    DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | THE BELOW ITEMS WERE RECOVERED BY SA DURING A CONSENT SEARCH OF THE RESIDENCE OF DONVILLE JAMES AT 7535 SOUTH SAGINAW, CHICAGO, ILLINOIS, APT. 19.<br><br>MARKED FOR IDENTIFICATION: "MJN 03/25/02" (SA | |
| 1 | 03/25/02 (S) | 1 | P NOTE CFT $ 20.00 FRN P9684<br><br>CL/Q B Q# 1 FP B 12 SERIES 1996 FRB B2 SERIAL AF91274723F BP 46 | $20.00 |
| 2 | 03/25/02 (S) | 1 | P NOTE CFT $ 20.00 FRN P9684<br><br>CL/Q B Q# 1 FP B 12 SERIES 1996 FRB B2 SERIAL AB33209169A BP 46 | $20.00 |
| 3 | 03/25/02 (S) | 1 | P NOTE CFT $ 20.00 FRN P9684<br><br>CL/Q B Q# 1 FP B 12 SERIES 1996 FRB B2 SERIAL AD91269526A BP 46 | $20.00 |

TOTAL ⟶   $60.00

UNITED STATES SECRET SERVICE

SSF 1644 (03/86)

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

FINAL
TM        7B2

# CERTIFIED INVENTORY OF EVIDENCE

| | |
|---|---|
| SERIAL NUMBER | 201 2002 CS 000071 |

EVIDENCE HELD AGAINST    ☐ SPECIMEN

**JAMES DONVILLE**

EVIDENCE

SIGNATURE - SPECIAL AGENT                    03/25/02    DATE

                                            3/25/02

SIGNATURE - WITNESS                    DATE

CASE NO.    201-735-0131941-S

OFFICE    CHICAGO FIELD OFFICE

DATE OF INVENTORY    03/25/02    PAGE    1    OF    2    PAGES

REVIEWING SUPERVISOR

SIGNATURE                    3/25/02    DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at:    ☐FSD    ☐CFT.

SIGNATURE - DIVISION                    DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | THE BELOW ITEMS WERE RECOVERED BY SA DURING A CONSENT SEARCH OF THE RESIDENCE OF DONVILLE JAMES AT 7535 SOUTH SAGINAW, CHICAGO, ILLINOIS, APT. 19. | |
| | | | MARKED FOR IDENTIFICATION: "MJN 03/25/02" (SA | |
| 1 | 03/25/02 (S) | 10 | P NOTE CFT $ 20.00 FRN P9684 | $200.00 |
| | | | SERIES 1999 SERIAL BB94506595C | |
| 2 | 03/25/02 (S) | 9 | P NOTE CFT $ 20.00 FRN P9684 | $180.00 |
| | | | SERIES 1999 SERIAL AD29290429A | |
| 3 | 03/25/02 (S) | 10 | P NOTE CFT $ 100.00 FRN P9686 | $1000.00 |
| | | | SERIES 1996 SERIAL AB74723265U | |
| | | | TOTAL ⟶ | $1380.00 |

UNITED STATES SECRET SERVICE

SSF 1544 (03/86)

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

FINAL
TM        782

4/15/02

| CERTIFIED INVENTORY OF EVIDENCE | | | SERIAL NUMBER 201 2002 CS 000072 | |
|---|---|---|---|---|

**EVIDENCE HELD AGAINST** ☐ SPECIMEN

JAMES DONVILLE

**CASE NO.** 201-735-0131941-S

**OFFICE** CHICAGO FIELD OFFICE

**EVIDENCE**

**SIGNATURE - SPECIAL AGENT** 03/25/07 DATE

**DATE OF INVENTORY** 03/25/02 | PAGE 1 OF 2 PAGES

**REVIEWING SUPERVISOR**

**SIGNATURE** 7/25/02 DATE

**SIGNATURE - WITNESS** 3/25/02 DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at: ☐FSD ☐CFT.

**SIGNATURE - DIVISION** DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| 1 | 03/25/02 (S) | 1 | THE BELOW ITEMS WERE RECOVERED BY SA FROM A XEROX WORKCENTRE M940, SERIAL #PTO 092780 DURING A CONSENT SEARCH OF THE RESIDENCE OF DONVILLE JAMES AT 7535 S. SAGINAW, CHICAGO, IL, APT. 19.  MARKED FOR IDENTIFICATION: "MJN 03/25/02" (SA  P NOTE CFT $ 100.00 FRN P9686  SERIES 1996 SERIAL AB74723265U | $100.00 |
| | | | **TOTAL ⟶** | $100.00 |

SSF 1544 (03/86)

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

FINAL
TM   7B2

# CERTIFIED INVENTORY OF EVIDENCE

| | |
|---|---|
| **EVIDENCE HELD AGAINST** ☐ SPECIMEN | SERIAL NUMBER **201 2002 CS 000073** |
| JAMES DONVILLE | CASE NO. **201-735-0131941-S** |
| | OFFICE **CHICAGO FIELD OFFICE** |
| EVIDEN | DATE OF INVENTORY **03/25/02** PAGE **1** OF **2** PAGES |
| **SIGNATURE - SPECIAL AGENT** 03/25/02 DATE | REVIEWING SUPERVISOR |
| **SIGNATURE - WITNESS** 3/25/02 DATE | SIGNATURE 3/25/02 DATE |
| | I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at: ☐FSD ☐CFT. |
| | SIGNATURE - DIVISION DATE |

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| 1 | 03/25/02 (S) | 1 | THE BELOW ITEMS WERE RECOVERED BY SA FROM COMPAQ C31000, SERIAL #5G0ADGZHJB8, DURING A CONSENT TO SEARCH OF THE RESIDENCE OF DONVILLE JAMES AT 7535 S. SAGINAW, CHICAGO, IL, APT. 19.<br><br>MARKED FOR IDENTIFICATION: "MJN 03/25/02" (SA     ).<br><br>SHEET<br>8 1/2" X 11" SHEET OF OFF-WHITE PAPER BEARING FOUR (4) IMAGES OF CFT 20 FRN'S (P9684)<br>SERIAL #AD91269526A, SERIES: 1996<br>SERIAL #BG29290429A, SERIES: 1996<br>SERIAL #BB94506595C, SERIES: 1999<br>SERIAL #AF91274723F, SERIES: 1999 | $80.00 |
| | | | **TOTAL ⟶** | $80.00 |

UNITED STATES SECRET SERVICE

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

SSF 1544 (03/86)

FINAL
TM     7B2

# CERTIFIED INVENTORY OF EVIDENCE

| | |
|---|---|
| **SERIAL NUMBER** | 201 2002 CS 000074 |

**EVIDENCE HELD AGAINST** ☐ SPECIMEN

JAMES DONVILLE

**EVIDF**

SIGNATURE - SPECIAL AGENT     03/25/02     DATE

SIGNATURE - WITNESS     3/25/02     DATE

**CASE NO.** 201-735-0131941-S

**OFFICE** CHICAGO FIELD OFFICE

**DATE OF INVENTORY** 03/25/02     PAGE 1 OF 2 PAGES

**REVIEWING SUPERVISOR**

SIGNATURE     3/25/02     DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at:   ☐ FSD   ☐ CFT.

SIGNATURE - DIVISION     DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | THE BELOW ITEMS WERE RECOVERED BY SA DURING A CONSENT TO SEARCH OF THE RESIDENCE OF DONVILLE JAMES AT 7535 S. SAGINAW, CHICAGO, IL, APT. 19.<br><br>MARKED FOR IDENTIFICATION: "MJN 03/25/02" (SA | |
| 1 | 03/25/02 (S) | 11 | SHEET<br>8 1/2" X 11" SHEET OF OFF-WHITE PAPER BEARING THE FRONT IMAGE ONLY OF A CFT $20 FRN (P9684) SERIAL #BB94506595C, SERIES: 1996 | $220.00 |
| 2 | 03/25/02 (S) | 2 | SHEET<br>8 1/2" X 11" SHEET OF OFF-WHITE PAPER BEARING FOUR (4) IMAGES OF CFT 20 FRN'S (P9684)<br>SERIAL #AD91269526A, SERIES: 1996<br>SERIAL #BG29290429A, SERIES: 1996<br>SERIAL #BB94506595C, SERIES: 1999<br>SERIAL #AF91274723F, SERIES: 1996 | $160.00 |
| | | | **TOTAL ⟶** | $380.00 |

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

SSF 1544 (03/86)

FINAL
TM     7B2

# CERTIFIED INVENTORY OF EVIDENCE

| | |
|---|---|
| **SERIAL NUMBER** | 201 2002 CS 000076 |

EVIDENCE HELD AGAINST ☐ SPECIMEN

JAMES DONVILLE

EVIDENC

03/25/02 DATE

SIGNATURE - SPECIAL AGENT

3/25/02 DATE

SIGNATURE - WITNESS

CASE NO. 201-735-0131941-S

OFFICE
CHICAGO FIELD OFFICE

DATE OF INVENTORY 03/25/02 | PAGE 1 OF 2 PAGES

REVIEWING SUPERVISOR

5/25/02 SIGNATURE DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at: ☐FSD ☐CFT.

SIGNATURE - DIVISION DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | THE BELOW ITEMS WERE RECEOVERED BY SA DURING A CONSENT SEARCH OF THE RESIDENCE OF DONVILLE JAMES AT 7535 SOUTH SAGINAW, CHICAGO, ILLINOIS, APT. 19. <br><br> MARKED FOR IDENTIFICATION: "MJN 03/25/02" (SA | |
| 1 | 03/25/02 (S) | 4 | SHEET <br> 8 1/2" X 11" SHEETS OF OFF-WHITE PAPER BEARING FRONT IMAGES ONLY OF FOUR (4) CFT $20 FRN'S (P9684) <br> TWO (2) - SERIAL #AD91269526A - SERIES: 1996 <br> TWO (2) - SEIRAL #BG29290429A - SERIES: 1996 <br> (TWO IMAGES ON FRONT OF PAPER & TWO ON BACK) | $320.00 |
| 2 | 03/25/02 (S) | 1 | SHEET <br> 8 1/2" X 11" SHEET OF OFF-WHITE PAPER BEARING TWO (2) FRONT AND BACK IMAGES OF CFT $20 FRN'S (P9684) <br> SERIAL #BB94506595C - SERIES: 1996 | $40.00 |
| | | | **TOTAL ⟶** | $360.00 |

UNITED STATES SECRET SERVICE

SSF 1544 (03/86)

FINAL
TM      7B2

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

| CERTIFIED INVENTORY OF EVIDENCE | | | SERIAL NUMBER 201 2002 CS 000077 | | | |
|---|---|---|---|---|---|---|
| EVIDENCE HELD AGAINST ☐ SPECIMEN | | | CASE NO. 201-735-0131941-S | | | |
| JAMES DONVILLE | | | OFFICE CHICAGO FIELD OFFICE | | | |
| EVIDENCE | | | DATE OF INVENTORY 03/25/02 | PAGE 1 OF 2 PAGES | | |
| 03/25/02 | | | REVIEWING SUPERVISOR | | | |
| SIGNATURE - SPECIAL AGENT DATE | | | | | | |
| 3/25/02 | | | SIGNATURE 3/25/02 DATE | | | |
| SIGNATURE - WITNESS DATE | | | I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at: ☐FSD ☐CFT. | | | |
| | | | SIGNATURE - DIVISION DATE | | | |

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | THE BELOW ITEMS WERE RECOVERED BY SA DURING A CONSENT TO SEARCH OF THE RESIDENCE OF DONVILLE JAMES AT 7535 SOUTH SAGINAW, CHICAGO, ILLINOIS, APT. 19. MARKED FOR IDENTIFICATION: "MJN 03/25/02" | |
| 1 | 03/25/02 (S) | 1 | SHEET 8 1/2" X 11" SHEET OF OFF-WHITE PAPER BEARING THE FRONT IMAGES ONLY OF TWO (2) CFT $20 FRN'S (P9684) SERIAL #AD91269526A - SERIES: 1996 SERIAL #BG29290429A - SERIES: 1999 | $40.00 |
| 2 | 03/25/02 (S) | 6 | SHEET 8 1/2" X 11" SHEETS OF OFF-WHITE PAPER BEARING FRONT IMAGES ONLY OF THREE (3) CFT $20 FRN'S (P9684) SERIAL #AD91269526A - SERIES: 1996 SERIAL #BG29290429A - SERIES: 1999 SERIAL #BB94506595C - SERIES: 1999 | $360.00 |
| | | | TOTAL ⟶ | $400.00 |

NITED STATES SECRET SERVICE

SSF 1544 (03/86)

FINAL
TM    7B2

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

# CERTIFIED INVENTORY OF EVIDENCE

| | |
|---|---|
| SERIAL NUMBER | 201 2002 CS 000078 |

EVIDENCE HELD AGAINST     ☐ SPECIMEN

**JAMES DONVILLE**

EVIDEN

| | |
|---|---|
| CASE NO. | 201-735-0131941-S |
| OFFICE | CHICAGO FIELD OFFICE |
| DATE OF INVENTORY | 03/25/02    PAGE 1 OF 3 PAGES |
| REVIEWING SUPERVISOR | |

SIGNATURE - SPECIAL AGENT    03/25/02   DATE

SIGNATURE - WITNESS    3/25/02   DATE

SIGNATURE    3/25/02   DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at:   ☐FSD  ☐CFT.

SIGNATURE - DIVISION    DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | THE BELOW ITEMS WERE RECOVERED BY SA DURING A CONSENT TO SEARCH OF THE RESIDENCE OF DONVILLE JAMES AT 7535 SOUTH SAGINAW, CHICAGO, ILLINOIS, APT. 19. | |
| | | | MARKED FOR IDENTIFICATION: "MJN 03/25/02" (SA | |
| 1 | 03/25/02 (S) | 1 | SHEET 8 1/2" X 11 SHEET OF OFF-WHITE PAPER BEARING THE REAR IMAGES ONLY OF FOUR (4) CFT $20 FRN'S (P9684) TWO (2) BACK PLATE: 93 TWO (2) BACK PLATE: 118 | $80.00 |
| 2 | 03/25/02 (S) | 13 | P NOTE CFT $ 20.00 FRN P9684 SERIES ? BP 32 (BACK IMAGES ONLY) | $260.00 |
| 3 | 03/25/02 (S) | 11 | P NOTE CFT $ 20.00 FRN P9684 SERIES ? BP 93 (BACK IMAGES ONLY) | $220.00 |
| | | | **TOTAL ⟶** | $560.00 |

UNITED STATES SECRET SERVICE

SSF 1544 (03/86)

FINAL
TM    

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE



| Certified Inventory of Evidence | | SERIAL NUMBER (FROM SSF 1544) 201 2002 CS 000078 | | | |
|---|---|---|---|---|---|
| 'Continuation Sheet) | | | PAGE **2** OF **3** PAGES | | |
| DATE OF INVENTORY 03/25/02 | | OFFICE CHICAGO FIELD OFFICE | | CASE NO. 201-735-0131941-S | |
| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | | VALUE |
| | | | **BROUGHT FORWARD** | | $560.00 |
| 4 | 03/25/02 (S) | 11 | P NOTE CFT $ 20.00 FRN P9684 SERIES ? BP 118 (BACK IMAGES ONLY) | | $220.00 |
| | | | **TOTAL** ⟶ | | $780.00 |

UNITED STATES SECRET SERVICE

SSF 1544A (03/88)

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

FINAL
TM





**United States Secret Service**
**Chicago Field Office**
**312/353-5431 (Main)**
**312/353-1225 (Fax)**

U.S. SECRET SERVICE
CHICAGO FIELD OFFICE
02 JUL 24  PM 3: 26

To: AFB

From: SA

Subject: Seizure 201-02-004

# Pages: 15

Remarks: Here are the 1544's Associated
with seizure 201-02-004 that relate to
the counterfeit currency

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| DONVILLE JAMES )<br>)<br>     Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES SECRET SERVICE )<br>FEDERAL BUREAU OF INVESTIGATION )<br>DEPARTMENT OF JUSTICE )<br>     Defendants. )<br>_____ ) | Civ. No. 06-1951 (GK) |

**ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment.

Upon consideration of the Motion, the opposition, the reply, and the entire record herein, it is by

the Court this _____ day of _____, 2007 hereby

ORDERED that Defendants' Motion for Summary Judgment is hereby GRANTED; and

it is further

ORDERED that the above captioned matter is hereby DISMISSED WITH PREJUDICE.

SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE